**MONTGOMERY ENVIRONMENTAL COALITION et al., Plaintiff,**

v.

**Dr. Robert W. FRI et al., Defendants.**

**Civ. A. No. 1307–73.**

United States District Court,
District of Columbia,
Civil Division.

Oct. 31, 1973.

Robert L. Ackerly, Washington, D. C., for plaintiffs.

Warren K. Rich, Sp. Asst. Atty. Gen., Dept. of Natural Resources, for Governor Marvin Mandel, Md. Dept. of Natural Resources, Md. Dept. of Health and Mental Hygiene and Md. Water Resources Admin.

Richard S. McKernon, County Atty., Montgomery County, Rockville Md., for Montgomery County Council.

C. Francis Murphy, Corporation Counsel, John C. Salyer and Iverson O. Mitchell, III, Asst. Corporation Counsel, Washington, D. C., for Mayor Walter E. Washington and D. C. Dept. of Environmental Services and the Environmental Protection Agency.

J. Eugene Cleary, Hyattsville, Md., for defendant Washington Suburban Sanitary Commission.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This cause of action is based on violations of certain water quality standards which plaintiffs claim are actionable under the Federal Water Pollution Control Act Amendments of 1972 (1972 Act), 33 U.S.C. § 1251 et seq. (Supp. II, 1973). Plaintiffs, who comprise two community groups and the District of Columbia, bring this suit pursuant to the "Citizen Suits" provision of the 1972 Act, 33 U.S.C. § 1365(a). The complaint is for declaratory and injunctive relief ordering defendants to refrain from approving, permitting or authorizing further sewer hookup permits which would result in sewage discharges affecting the water quality of the Potomac River. The case is now before the Court on motions to dismiss filed by seven of the eight defendants against the two community groups.[1] For reasons set forth below, this Court grants the motions to dismiss filed by defendants Montgomery County Council, James P. Gleason, County Executive, and the Department of Natural Resources for the State of Maryland, and denies the motions to dismiss filed by the remaining four defendants.

## I STANDING

■ Defendants advance that in view of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972),

1. The motion to dismiss filed by the remaining defendant, Russell E. Train, Administrator of the Environmental Protection Agency, is not considered at this time. The motions to dismiss now before the Court are directed only against the Montgomery Environmental Coalition and the Citizens Coordinating Committee on Friendship Heights. The third plaintiff, District of Columbia, is not a named party to these motions.

plaintiff community groups lack standing in this case because they have failed to allege that either they or their members individually use the Potomac River for any purpose, much less that they use it in any way that would be adversely affected by the defendants' actions.

The statutory grant relied on for standing in *Sierra* is § 10 of the Administrative Procedure Act, 5 U.S.C. § 702, which provides in part:

"A person . . . adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."

In the present case, 33 U.S.C. § 1365(a) allows "any citizen" to bring a civil suit. Section 1365(g) defines citizen as:

". . . a person or persons having an interest which is or *may* be adversely affected." (emphasis added)

While the statutory language relied on for standing in the instant case is arguably broader in scope than that relied on in *Sierra*, the Court takes note of congressional intent behind section 1365 (g) which sought to base standing requirements on those pronounced in *Sierra*.[2] Applying the *Sierra* guidelines to plaintiff community groups, the Court finds that standing has been established.

The two community groups allege in their complaint that their members are citizens of the District of Columbia and Montgomery County, Maryland, two jurisdictions which are contiguous to the flow of the Potomac River. Unlike the plaintiff in *Sierra*, the instant plaintiffs are groups of citizens who claim to live within the environs of the natural object they seek to protect. General inter-

est in the aesthetic and environmental well-being of a river running past one's community area is obviously on a higher plane than the interest a national environmental group composed of non-resident citizens or users might properly claim. It would be an unjustified presumption on the Court's part to think that none of the aesthetic and recreational values of the plaintiffs will be lessened by increased pollution of the Potomac River when the river itself passes within the midst of plaintiffs' community.

## II JURISDICTION

Jurisdiction is claimed under the citizen suit provision of the 1972 Act, 33 U.S.C. § 1365(a)(1), which permits citizen suits for violation of (A) an effluent standard or limitation under the Act, or (B) an order issued by the Administrator of the Environmental Protection Agency or a State with respect to such standards or limitations. Plaintiffs contend that water quality standards for the District of Columbia and Maryland promulgated under the Water Quality Act of 1965 (1965 Act), 33 U.S.C. § 1151 et seq., constitute effluent standards or limitations pursuant to § 1365 (a)(1)(A), and that the two agreements to which the District and Maryland are signatories, constitute a state order within the scope of § 1365(a)(1)(B).[3]

The 1972 Act creates an enforcement policy built around specific effluent limitations as opposed to the water quality standards of the 1965 Act. A comparison of the two Acts indicates that water quality standards refer to maximum concentrations of pollutants in a body of water while effluent standards refer

---

2. 118 Cong.Rec. S16876 et seq., S16804 (daily ed., Oct. 4, 1972) (statement and remarks by Senator Muskie).

3. The water quality standards referred to by plaintiffs are contained in State of Maryland Water Quality Standards Summary, U.S. Environmental Protection Agency, Doc.No. WQS 24–001, and District of Columbia Water Quality Standards Summary, U.S. Environmental Protection Agency, Doc.No. WQS

11–001. The agreements referred to by plaintiffs are (1) Memorandum of Understanding on Washington Metropolitan Regional Water Pollution Control Plan (October 1970), and (2) Implementation of Paragraph #10 of the October 1970 Memorandum of Understanding by the District of Columbia, Fairfax County and Washington Suburban Sanitary Commission (1971 Interim Chemical Agreement).

to absolute limitations on pollutants discharged from a particular source. The former are concerned with the quality of a water body in general while the latter emphasize the quality of a discharge source entering a water body.

Notwithstanding this apparent distinction in water quality terminology, nor the fact that 33 U.S.C. § 1365(a)(1) restricts citizen suits to violations of effluent standards or limitations, this Court concludes that section 1365(a) does confer jurisdiction on plaintiff community groups.

An effluent standard or limitation is defined in 33 U.S.C. § 1365(f)(1) as:

". . . effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title . . . ."

Section 1311(a) provides:

"Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."

The exceptions named in section 1311(a) deal with the establishment of effluent standards, timetables for their adoption, and a discharge permit system for their regulation. The combined effect of these exceptions is to gradually constrain the legally permissible limits of pollutants in discharge sources until a total elimination of such pollutants is reached by 1985.[4]

The fact that such limitations have not yet been promulgated does not mean that section 1311(a) cannot be violated. Section 1313 of Title 33 United States Code carries over and extends the water quality standards program of the 1965 Act. Taking into consideration the statutory language of section 1313, its legislative history,[5] its position as a predecessor to the stricter controls of the 1972 Act, the remedial nature of both Acts, and the Congressional declaration of goals and policy behind the 1972 Act,[6] it is this Court's firm conviction that water quality standards promulgated pursuant to the 1965 Act are to constitute a floor level of quality until the stiffer effluent limitations of the 1972 Act can be implemented. Consequently, the discharge of a pollutant which contributes to the violation of an existing water quality standard is clearly a violation of 33 U.S.C. § 1311(a).

Since plaintiffs have properly alleged an unlawful act under section 1311(a), the next issue is whether the alleged act was one occurring on or after July 1, 1973. An original complaint was filed by the two community groups on June 28, 1973, in which the District of Columbia was a named defendant. On October 3, 1973, an amended complaint was filed under the Court's fiat in which the District was realigned as a plaintiff. In passing on the issue of whether the effective date of the suit is June 28th or October 3rd, the Court notes that paragraph 15 of the amended complaint alleges that sixty days have passed since plaintiffs gave notice of the alleged violation to all necessary and required parties. The passage of sixty days had not transpired at the time the original complaint was filed. Since this new allegation relates to an event which "happened since the date of the pleading sought to be supplemented," Rule 15 (d), Federal Rules of Civil Procedure, is controlling and the new pleading should be considered a supplemental one. The erroneous characterization of the corrected pleading as an "amended complaint" is immaterial. United States for Use of Atkins v. Reiten, 313 F.2d 673, 674 (9th Cir. 1963). The fact that the supplemental pleadings introduce a new cause of action not alleged in the original complaint should not bar their introduction. Rule 15(d) expressly provides:

"Permission may be granted even though the original pleading is defec-

---

4. *See* Congressional declaration of goals and policy, 33 U.S.C. § 1251(a)(1) (Supp. II, 1973).

5. 118 Cong.Rec., *supra* note 2, at S16873.

6. *See* Congressional declaration of goals and policy, 33 U.S.C. § 1251(a) (Supp. II, 1973).

tive in its statement of a claim for relief or defense."

It is within the sound discretion of the Court to grant leave for correction of pleadings as justice may require. Atkins, *supra*; Lodge 1858, American Federation of Gov. Emp. v. Paine, 141 U.S. App.D.C. 152, 436 F.2d 882, 898 (1970).

■ In the instant case, the violations alleged in the supplemental pleadings do not create surprise nor prejudice the rights of the defendants as they are a continuation of the same violations alleged in the June 28th complaint. In addition, the purpose of the July 1, 1973 effective date set forth in section 1365 (f)(1) is, according to its legislative history, to give the "State and Federal governments" sufficient time to "develop fully, and execute the authority contained" in section 1342 (discharge permit program).[7] Obviously, such congressional intent is in no way frustrated by the supplemental pleadings especially since they are based on pre-1972 Act water quality standards. Accordingly, leave is granted *sua sponte* for the supplemental pleading to be served.

Because the supplemental pleadings allege on-going violations which have continued to occur up to the October 3rd filing date, the provision of section 1365 (f)(1) with respect to causes of action effective July 1, 1973, has been met. Having decided that plaintiffs have established evidence of an effluent standard or limitation within the meaning of section 1365(f)(1), the Court does not pass on whether the two agreements noted in paragraph 29 of the supplemental pleadings constitute a state order under 33 U.S.C. § 1365(a)(1)(B).

■ The final issue to be determined with regard to jurisdiction is whether plaintiff community groups gave proper notice pursuant to 33 U.S.C. § 1365(b) which provides in pertinent part:

"No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged viola-

tion (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator . . . Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation."

On May 10, 1973, purported notices were given by plaintiff community groups to defendants Administrator of the Environmental Protection Agency, Washington Suburban Sanitary Commission, Montgomery County Council, James Gleason, and Maryland Governor Marvin Mandel. On June 1, 1973, the Administrator prescribed notice regulations pursuant to section 1365(b). 40 C.F.R. 135 et seq.

In view of the fact that the supplemental pleadings were filed more than sixty days after the May 10th notice and in view of the fact that said notice complied in full with the spirit of the Administrator's June 1st regulations, plaintiff community groups are found to have given proper notice under section 1365(b).

Accordingly, jurisdiction has been established by plaintiff community groups.

### III VENUE

■ Section 1365(c)(1) of Title 33 United States Code provides in pertinent part that venue for an action respecting a violation by a discharge source of an effluent standard or limitation shall lie "in the judicial district in which such source is located". The discharge source in controversy is the Blue Plains Treatment Plant located in the District of Columbia. Accordingly venue for an action respecting discharges from Blue Plains is properly laid in this Court.

### IV CAUSE OF ACTION

■ Defendants contend that plaintiff community groups have ·failed to state a claim upon which relief can be granted. In considering this argument, the Court believes the proper inquiry

---

7. U.S.Code Cong. & Ad.News, at p. 3747 (1972).

should be into whether any of the defendants individually exercises an authority which directly or indirectly controls the discharge of pollutants from the Blue Plains Plant. If the answer is in the negative, a sufficient cause of action has not been pleaded since there would be no entitlement to relief as required by Rule 8(a) of the Federal Rules of Civil Procedure.

The gravamen of plaintiffs' complaint is that defendants are allowing the channeling of more sewage into the Blue Plains Plant than can be adequately processed. A review of the pleadings indicates that a claim capable of relief has been stated as to defendants Washington Suburban Sanitary Commission, the Governor of Maryland, the Maryland Department of Health and Mental Hygiene, and the Water Resources Administration for the State of Maryland. The allegations in the complaint as originally filed and as supplemented clearly evidence acts or powers on the parts of said defendants which if assumed true would directly or indirectly control the amount of pollutants that are discharged into the Potomac River via the facilities at Blue Plains.[8]

█ A claim capable of relief has not been stated as to the Department of Natural Resources for the State of Maryland since the pleadings indicate no authority on the part of this defendant to control the actual discharge of pollutants from Blue Plains other than to provide for water treatment facilities in Maryland. The power of defendant to enter into contracts for water treatment services can obviously alleviate water pollution but said power cannot order cessation under a court mandate.

█ With regard to the Montgomery County Council and the County Executive, the complaint alleges that these defendants provide "direction and policy assistance on local governmental problems" and "exercise ultimate authority . . . to permit or deny any and all construction in the County". The complaint does not allege any authority over enforcement of water quality standards or sewer hookup permits. At oral hearing, it was alleged and not denied that said defendants exercise no authority over the actions of the Washington Suburban Sanitary Commission other than to nominate and approve the County's allotted share of Commission members. The alleged authority over County construction is too far beyond the pale of a requisite connection with the instant controversy to warrant imposition of relief. Accordingly, this Court finds that no claim has been stated against the Montgomery County Council and the County Executive upon which relief can be granted.

### ORDER

Upon consideration of the Motions to Dismiss filed by defendants Montgomery County Council, James P. Gleason, Governor Marvin Mandel, the Maryland Department of Natural Resources, the Water Resources Administration, the Department of Health and Mental Hygiene, and the Washington Suburban Sanitary Commission, the memoranda of points and authorities in support thereof and in opposition thereto, oral arguments of counsel having been heard, and for reasons set forth in the attached Memorandum Opinion, it is by the Court this 31st day of October, 1973

8. It is noted that defendant Department of Water Resources for the State of Maryland is alleged by plaintiffs to have the authority to issue orders prohibiting the discharge of wastes into Maryland waters. The Blue Plains Treatment Plant is in the District of Columbia and presumably beyond the jurisdiction of said defendant. However, plaintiffs seek restraints on sewage discharges at various other points along the Potomac River which lie within defendant's jurisdiction. For this reason, and without deciding at this time whether the Court has ancillary jurisdiction over discharge sources outside the District of Columbia, the Department of Water Resources will be retained as a party defendant.

Ordered that the Motions to Dismiss filed by defendants Montgomery County Council, James P. Gleason, County Executive for Montgomery County, and the Maryland Department of Natural Resources be, and the same hereby are, granted; and it is further

Ordered that the Motions to Dismiss filed by defendants Governor Marvin Mandel, the Water Resources Administration, the Department of Health and Mental Hygiene, and the Washington Suburban Sanitary Commission be, and the same hereby are, denied; and it is further

Ordered that all named defendants in this case be given ten days from the date of this Order to answer, move, or otherwise respond to the supplemental pleadings filed by plaintiffs on October 3, 1973.