OPINION
 

 KEVIN THOMAS DUFFY, District Judge:
 

 This is an action brought under the Federal Water Pollhtion Control Act [“FWPCA”], 33 U.S.C. § 1251
 
 et seq.,
 
 arising from the alleged pollution of a pond and stream which traverse property owned by the plaintiff. The damage to the pond and stream purportedly resulted from the construction of a condominium project less than a mile north of plaintiff’s property in the Town of Lewisboro, New York, and the consequent discharge of hundreds of tons of sand and dirt and other construction wastes into the stream. The defendants include the condominium developers, the New York State Department of Environmental Conservation, the Town of Lewisboro, New York, and certain of its officials. All of these defendants have moved to dismiss the complaint and the plaintiff seeks leave to amend the complaint. The prolix complaint is far from a “short and plain statement of the claim . .. .” Fed.R.Civ.P. 8.
 

 For the reasons that follow, the motions to dismiss are granted, except as to the Developers, and plaintiff’s motion to amend the complaint is denied.
 

 I.
 

 Plaintiff Stanley Love is a resident of the Town of Pound Ridge, New York. He owns approximately 24 acres of land situated between Pound Ridge and Lewisboro, New York. On Mr. Love’s land is a large pond fed by a stream known as the Third Tributary of the Siscowit Reservoir. The reservoir lies partly within New York and partly within Connecticut, and it constitutes an important part of the water supply of Stamford, Connecticut.
 

 In 1977 or 1978, the defendant Oakridge Land and Property Corp. [“Oakridge”], a land development company, applied to the Town of Lewisboro and its Planning Board for site-plan approval of a 330 unit condominium development. Oakridge is owned by a Connecticut corporation known as the Lusk Corporation who along with its president, Robert F. Lusk, is also a defendant in this action. The site for this project is a wetlands area traversed by the Third Tributary. Oakridge proposed to turn a portion of the wetlands area into a small recreation lake by excavating and dredging nearly 70,-000 cubic feet of earth. The project also called for the construction of a sewage treatment plant to process sewage generated by the approximately 1,000 persons expected to reside at the condominiums. The effluent from the plant was to be discharged into the stream and be drained by the overflow from the lake into the Siscowit Reservoir.
 

 On May 5, 1978, Oakridge obtained a New York State Pollutant Discharge Elimination System [“SPDFS”] Permit approved by the New York State Department of Environmental Conservation [“NYDEC”] and authorized by the FWPCA for the discharge of pollutants into protected waters. As a
 
 *830
 
 condition to granting this permit, Oakridge was required to execute a stipulation, on or about April 4, 1978, guaranteeing (i) levels of effluent purity, (ii) design approval and (iii) monitoring. The other parties to the stipulation were NYDEC, the Town of Pound Ridge, the New England Interstate Water Pollution Control Commission, the Connecticut Department of Environmental Protection, the Connecticut Department of Health and the Stamford Water Company. The stipulation is enforceable by any of these parties and is a covenant running with the land.
 

 In late 1979, Oakridge began construction and dredging of the pond. Plaintiff asserts that in the process of dredging, Oakridge has directly discharged into the stream, through hoses, polluted waters carrying dirt, sand, rock, dredged soil, decaying vegetable materials, suspended collodial solids and other pollutants. In addition, according to the complaint, dredged and fill materials have been discharged and thrown into the stream and also have been carried there by rain and other waters drawing from the excavation site. Plaintiff further alleges that Oakridge has permitted and caused polluted waters from the recreational pond to wash into the stream. It is urged that such action violates both federal and New York law.
 

 The result of this unlawful conduct, according to the plaintiff, is that the stream and pond have suffered devastating ecological damage visible to the naked eye. The water has changed “from clear to dark brown.” (Complaint, ¶ 32). The measurable turbidity in the stream caused by the suspension in the water of pollutants has increased significantly.
 
 [1]
 
 The free flow of water has been slowed and algae and scum have formed on the surface of the pond and stream. This has resulted in a diminishing of the dissolved oxygen content of the pond with consequent adverse effects on fish and other natural life. Plaintiff further claims that the Siscowit Reservoir down stream has been endangered.
 

 The complaint sets out eighteen claims for relief against the private developer, state and local governments and their officials. The State Defendants are the NY-DEC, an agency of the State of New York; Robert F. Flacke, Commissioner of the NY-DEC; Paul Keller, Director of Region III of NYDEC, the Region having immediate jurisdiction over the towns of Lewisboro and Pound Ridge; and Eugene Seebald, Director of the Division of Water for the NYDEC [collectively referred to hereinafter as the “State Defendants”].
 

 The Town Defendants are the town of Lewisboro, New York; Robert E. Green, Supervisor of Lewisboro and presiding officer of the Town Board of Lewisboro which is the governing body of the town; Robert E. Neukirch, Lynn H. Corson, Leslie N. Simon and Robert G. Langevin, as members of the Town Board; and Paul A. Lewis, John A. Armstrong, John J. Donovan, Carolyn U. Smith and Theodore Chase, as members of the Planning Board of Lewisboro whose powers derive from grants by the Town Board [collectively referred to hereinafter as the “Town Defendants”].
 

 The private defendants in this case are Oakridge, a New York corporation that owns the land upon which the development in this case is being constructed, the Lusk Corporation, a Connecticut corporation which allegedly owns the capital stock of Oakridge, and Robert F. Lusk, who is President of Oakridge and principal owner of Lusk stock [collectively referred to hereinafter as the “Developers”].
 

 Briefly, the eighteen claims may be summarized as follows:
 

 1. Claims Against Developers
 

 The Developers are named in nine claims. The first claim reiterates the events earlier described and alleges that the Developers, as a result of discharging pollutants, violat
 
 *831
 
 ed Section 301(a) of the FWPCA, 33 U.S.C. § 1311(a), which prohibits “the discharge of any pollutant by any person” without an appropriate permit. (Count 1). In a separate claim, the plaintiff seeks $5,000,000 in punitive damages for the Developers purported willful and knowing violation of Section 301. (Count 10). It is asserted that the Developers willfully disregarded warnings from state and federal officials regarding the pollution that would result if adequate measures were not taken. These defendants allegedly continued to discharge pollutants knowing the irreparable harm that was occurring from their unlawful acts.
 

 The third claim accuses the Developers of violating Section 404 of the FWPCA, 33 U.S.C. § 1344, in that they failed to obtain a permit from the Secretary of the Army before discharging dredged materials. The fourth claim against the Developers urges that they created a public nuisance redress-able in federal court under 28 U.S.C. § 1331. (Count 7). The remaining five claims assert violations of New York common law for public and private nuisance, violations of' New York’s environmental statutes, unlawful trespass to plaintiff’s land and riparian rights, and
 
 prima facie
 
 tort.
 

 2. Claims Against State Defendants
 

 The State Defendants are named in five claims. The first claim accuses the State Defendants of also having violated Section 301 of the FWPCA. These defendants are vested with the duty under New York law and the FWPCA to ensure that New York waters are protected from pollution. According to the plaintiff, these officials participated in the SPDES permit proceeding and were well aware of the anticipated adverse impact of the Oakridge project. They purportedly violated federal law by approving the environmental impact statement and by failing to take steps to prevent the pollution that has resulted.
 

 The complaint further names the State Defendants with a violation of Section 404 of the FWPCA for failing to require a permit to be obtained prior to approving the environmental impact statement. The only other federal claim naming these defendants is one for helping to create a public nuisance. The two remaining claims involve state law. One charges the State Defendants with having violated the New York Environmental Conservation Law [“ECL”], Section 1-0101
 
 et seq.
 
 (McKinney’s). The ECL establishes standards of quality for New York waters and requires a permit to be issued by the NYDEC Commissioner before pollutants can be discharged. It also requires the NYDEC to take action to prevent and abate pollution. The final claim against the State Defendants charges generally that they were negligent in not fulfilling their duty to protect plaintiff’s property from untoward pollution.
 

 3. Claims Against Town Defendants
 

 The principal claim against the Town Defendants also asserts a violation of Section 301 of the FWPCA. According to the plaintiff, Lewisboro, through its Planning Board, demanded and received the approval of the NYDEC to act as the lead governmental agency in supervising the Oakridge Project. This meant that Lewisboro had the obligation to assure compliance with the FWPCA at all times. It is asserted that the Town Defendants, despite warnings of the potential pollution damage, “negligently, knowingly .. . and unlawfully” (a) approved the final environmental impact statement which failed to adequately protect against the pollution that has resulted; (b) permitted construction to commence without requiring preventative measures; (c) failed to heed the recommendations of state and federal officials regarding such measures; and (d) failed to halt construction or take other actions to prevent or to mitigate the damage resulting from the construction. Two other claims name the Town Defendants. One is a claim under New York common law for public and private nuisance. The other is
 
 a
 
 claim for negligence alleging the Town Defendants shirked their duties by failing to prevent the damage to plaintiff’s property.
 

 
 *832
 
 4. Relief Sought
 

 Essentially, plaintiff seeks an injunction against Oakridge from continuing with the project and further pollution of the stream. Plaintiff also seeks an order directing the Town Defendants to take “all necessary action” to prohibit further construction until it is shown that further construction will not violate the law or interfere with plaintiff’s rights. The complaint additionally requests an order directing the NYDEC to take “all necessary action” to prevent further pollution of the stream.
 

 Plaintiff seeks actual damages from all defendants in the amount of $2,000,000 and punitive damages from the Developers in the amount of $5,000,000. Furthermore, plaintiff asks that the Developers be fined $10,000 per day for each day that they have violated the FWPCA.
 
 See
 
 Section 309(d) of the FWPCA, 33 U.S.C. § 1319(d).
 

 II.
 

 The State Defendants have moved for a judgment on the pleadings under Fed.R. Civ.P. 12(e) with respect to the claims against them on several grounds including that the action is barred by the Eleventh Amendment and that no jurisdiction lies under the FWPCA.
 

 The Town Defendants have moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Town Defendants argue that they never had authority to enforce the FWPCA and that the citizen suit provision of the FWPCA, 33 U.S.C. § 1365, does not apply here because the plaintiff has not alleged that the Town Defendants violated an effluent standard or an order by the State or failed to perform a nondiscretionary duty.
 

 The Developers have moved to dismiss under Fed.R.Civ.P. 12(b)(6) and 12(b)(1) or in the alternative for summary judgment under Fed.R.Civ.P. 56. This motion is premised
 
 inter alia
 
 on the theory that no private damage action exists under the FWPCA, that Oakridge has a nationwide permit to discharge effluent materials, that there is no federal common law nuisance claim and that the plaintiff’s suit is barred by New York’s four month statute of limitations.
 

 Subsequent to these motions being made, two Supreme Court decisions were announced which dispose of several of plaintiff’s claims. In
 
 City of Milwaukee v. Illinois,
 
 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981) the Supreme Court held that the FWPCA preempted the federal common law of public nuisance in the area of interstate water pollution. Several months later in
 
 Middlesex County Sewerage Authority v. National Sea Clammers Association,
 
 - U.S. -, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) the Supreme Court held that there is no private right of action under the FWPCA for monetary damages. Therefore, the only remedy directly available to the plaintiff if he chooses to sue under the FWPCA are those described in Section 505(a), 33 U.S.C. § 1365.
 

 As a result of these decisions, the plaintiff here may only sue for prospective injunctive relief upon giving 60 days notice to the Federal Environmental Protection Agency [“EPA”], the State, and any alleged violator. 33 U.S.C. § 1365(b)(1)(A). The complaint is therefore dismissed insofar as it seeks monetary relief or is based on a theory of federal common law. The remaining portions of the complaint will now be analyzed in the context of each of defendants’ motions.
 

 III.
 

 1. State Defendants’ Motion
 

 The State Defendants argue that the suit against it is barred by the Eleventh Amendment to the United States Constitution. It is settled law, however, that the Eleventh Amendment does not prohibit a claim seeking prospective injunctive relief against State officials for violations of federal law.
 
 See Edelman v. Jordan,
 
 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974);
 
 Ex Parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus, plaintiff’s claims for injunctive relief against defendants
 
 *833
 
 Flacke, Keller and Seebald are not barred by the Eleventh Amendment.
 

 The claims against the NYDEC stand on a different footing. This claim must be considered as one against the State itself because the NYDEC is the arm of the State enforcing its environmental policies.
 
 See Byram River v. Village of Port Chester, New York,
 
 394 F.Supp. 618, 625 (S.D.N.Y. 1975). Although examples of injunctive relief against state agencies do exist,
 
 see Florida Nursing Home Ass’n. v. Page,
 
 616 F.2d 1355 (5th Cir. 1980),
 
 cert. denied,
 
 449 U.S. 872,101 S.Ct. 211, 66 L.Ed.2d 92 (1981), I believe the Eleventh Amendment provides a jurisdictional prohibition against any suit brought against a state agency if the state is the real party in interest, unless the state has waived its immunity.
 
 See Alabama v. Pugh,
 
 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1981);
 
 Byram River, supra.
 
 Plaintiff argues that the State waived its immunity by entering into a stipulation with Oakridge, the Town of Pound Ridge, the New England Interstate Water Pollution Central Commission, the Connecticut Department of Health and the Stamford Water Company. This stipulation sets levels of effluent purity and is enforceable by any of the parties “by any and all judicial proceedings . . .. ”
 

 The- simple answer to this argument is that the instant suit is not an attempt to enforce the stipulation. . Moreover, it cannot be said that the NYDEC contemplated acquiescence to suits by individual citizens such as Mr. Love who were not even a party to the stipulation. In any ease, the stipulation is hardly the sort of clear and explicit waiver required for a state to relinquish its constitutional immunity from suit in federal court.
 
 See Rothstein v. Wyman,
 
 467 F.2d 226, 238 (2d Cir. 1972),
 
 cert. denied,
 
 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973).
 

 Having determined that the Eleventh Amendment does not bar the claims for injunctive relief against the defendant state officials, the next issue becomes whether there exists proper subject matter jurisdiction in this case. The plaintiff argues that this suit is properly before this Court as a citizen suit under Section 505(a) of the FWPCA, 33 U.S.C. § 1365(a), which provides in pertinent part:
 

 [A]ny citizen may commence a civil action on his own behalf—
 

 (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ....
 

 An effluent standard or limitation includes at a minimum the discharge of any pollutant without a permit.
 
 See
 
 33 U.S.C. §§ 1365(f), 1311(a). Plaintiff does not contend that the State Defendants are actually dumping wastes into the stream in violation of an effluent standard. Instead, plaintiff asserts that the State has aided and abetted the Developers in polluting plaintiff’s pond and stream in the following manner:
 

 (i) by. approving the Environmental Impact Statement without insuring that adequate controls were set up to prevent forewarned pollution-consequences of construction of the Oakridge project;
 

 (ii) by granting the SPDES a sewage effluent permit (without which the recreational pond could not have been built) despite knowledge of the dangers of sedimentation, pollution and other injuries to plaintiff’s waters;
 

 (iii) by failing to require an SPDES permit specifically for the discharge of pollutants resulting from construction activities;
 

 (iv) by failing to require that the defendant developers obtain a dredging permit under Section 404 of the FWPCA, 33 U.S.C. § 1344; and
 

 (v) by granting an earth dam permit despite knowledge of ongoing pollution caused by the project.
 

 The State Defendants argue that no action lies against them for violations of effluent standards in connection with a dis
 
 *834
 
 charge permit to the Developers. Support for this position can be found in
 
 Sun Enterprises, Ltd. v. Train,
 
 394 F.Supp. 211 (S.D. N.Y.1975),
 
 aff’d,
 
 532 F.2d 280 (2d Cir. 1976). In
 
 Sun Enterprises,
 
 a plaintiff landowner sued the New York Department of Environmental Conservation on the theory that it granted certification for discharge of effluents without taking into account certain adverse evidence. This led to the EPA Administrator granting a NPDES permit under 33 U.S.C. § 1342. The district court dismissed the case on grounds that the state certification was merely a step in the Administrative process of granting a permit
 
 [2]
 
 and that review of action by the Administrator must be had in the Court of Appeals as provided in the FWPCA, 33 U.S.C. § 1369(b)(1).
 

 The case at bar stands on a slightly different footing. The plaintiff asserts that
 
 inter alia
 
 the State Defendants improperly granted a discharge permit. Normally, the federal EPA issues such permits under the National Pollutant Discharge Elimination System [“NPDES”]. Congress established the NPDES as a means of achieving and enforcing effluent limitations. Under the NPDES, it is unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms. Mindful of its policy to place primary responsibility for eliminating pollution with the states,
 
 [3]
 
 however, Congress also provided states with the power to issue NPDES permits for discharge into navigable waters within its jurisdiction but only upon approval by the EPA of a state’s proposal to administer its own program. The EPA must approve of a state program if it meets federal guidelines,
 
 [4]
 
 at which point the EPA must suspend the issuance of permits so that the state can take over.
 
 [5]
 
 The EPA retains authority to review the operation of the state’s permit program and to prevent the issuance of a permit.
 

 New York State has established a state pollutant discharge system [“SPDS”] which expressly conforms to the FWPCA.
 
 See
 
 N.Y.Envir.Conserv.Law § 17-0801,
 
 et seq.
 
 (McKinney’s 1973).
 
 [6]
 
 It was under the SPDES that the permit in question in this case was issued. To contest the state’s issuance of the permit, plaintiff’s remedy is in an Article 78 proceeding in the state court.
 
 See
 
 N.Y.Envir.Conserv.Law § 17— 0909. The FWPCA provides for citizen suits against those in violation of an effluent standard or limitation. Here, the claim against the state is not that they have violated an effluent standard but that they, in essence, were malfeasant in not properly establishing a standard and moreover, failing to issue any orders to stop ongoing pollution. The FWPCA provides no mechanism for a direct suit in federal court against the state for these actions. The federal law does provide for a citizen suit against the EPA for failure to act in accordance with the FWPCA. 33 U.S.C. § 1365(a)(2), and a mechanism by which the EPA must oversee the state program,
 
 see
 
 33 U.S.C. § 1318. In this case, the plaintiff has chosen not to sue the EPA. If he wishes to sue the state directly, he must utilize the statutory procedure established.
 

 Plaintiff further argues that the state is liable for Oakridge’s alleged violations of effluent standards on an aiding and abetting theory. Plaintiff has not provided, nor does there appear to exist, any support for this theory of state liability under FWPCA. In any case, it does not overcome the lack of any subject matter jurisdiction under FWPCA necessary to sue the State Defendants in federal court.
 

 Plaintiff also argues that jurisdiction exists under Section 505(e) of the FWPCA, 33 U.S.C. § 1365(e), which states:
 

 Nothing in this section shall restrict any right which any person (or class of per
 
 *835
 
 sons) may have under any statute or common law to seek enforcement of any. effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).
 

 Plaintiff argues that this section preserves a citizen’s rights to sue under federal question jurisdiction, 28 U.S.C. § 1331, to seek enforcement of FWPCA provisions. The Supreme Court, however, has come to a different conclusion. In
 
 City of Milwaukee v. Illinois,. supra,
 
 the Court stated that Section 505(e) of the FWPCA means only that the citizen suit provision of the FWPCA does not supplant formerly available common law actions. The Court went on to hold that the elaborate system under the FWPCA for enforcing effluent standards pre-empted any private rights developed under federal common law to enforce the FWPCA. Section 505(e) does allow “further enforcement of anti-pollution standards arising under
 
 other
 
 statutes or state common law.”
 
 Middlesex County Sewage Authority v. National Sea Clammers Ass’n.,
 
 supra,-U.S. at —— n.13, 101 S.Ct. at 2626 n.31. It does not, however, create a separate grounds for enforcement of the FWPCA. Accordingly, plaintiff’s purported bases for jurisdiction under 33 U.S.C. § 1365(e) and 28 U.S.C. § 1331(a) are invalid.
 

 In sum, the State Defendants’ motion to dismiss the complaint is granted. This applies to the plaintiff’s state claims against the state as well. These pendant claims must be dismissed because the federal claims have been disposed of prior to trial. See
 
 McLearn v. Cowen & Co.,
 
 660 F.2d 845 (2d Cir. 1981).
 

 2. Town Defendants’ Motion
 

 The Town Defendants move to dismiss the federal claims against them for failure to state a claim upon which relief can be granted, and to dismiss the state claims because there is no grounds for the exercise of pendant jurisdiction. The basis for plaintiff’s federal claims are two-fold: first, that the Town Defendants violated Section 301(a) of the FWPCA, 33 U.S.C. § 1311(a), which prohibits discharge of pollutants without a permit, and second, that the Town Defendants failed to require that a dredging permit be obtained from the Secretary of the Army, as mandated by Section 404 of the FWPCA, 33 U.S.C. § 1344.
 
 [7]
 

 A.
 
 Section 301 Violation
 

 Under Section 301 of the FWPCA, “it is unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms.”
 
 EPA v. California ex rel. State Water Resources Control Board,
 
 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976). The complaint alleges that pollutants, including sand, rock and soil, were discharged into the stream and carried into plaintiff’s pond, without a permit and.with the Town Defendants’ knowledge. Although a permit for effluent discharge was eventually obtained, no permit was ever obtained for the silt, sand and other solid pollutants. According to plaintiff, the Town Defendants’ failure to require a permit combined with knowing acquiescence to the pollution constitutes a Section 301 violation..
 

 Plaintiff has misconstrued Section 301. That section does not impose liability on local government officials for a third party’s failure to obtain a permit or to comply with the environmental standards set forth in the permit.
 
 See Sun Enterprises, Ltd. v. Train, supra.
 
 The procedure for approval of projects and the environmental impact process is established by state statute.
 
 See
 
 N.Y.Envir.Conserv.Law § 8-0101
 
 et seq.
 
 (McKinney’s 1977). The damage allegedly being incurred by the plaintiff here arises from the activities of the private developer. Although the Town Defendants may have encouraged illegal discharging by failure to issue an order to stop further
 
 *836
 
 pollution, I do not believe this states a claim under Section 301 against the Town Defendants and plaintiff must again look to state law.
 

 Plaintiff relies principally upon the case
 
 Montgomery Environmental Coalition v. Fri,
 
 366 F.Supp. 261 (D.D.C.1973) to argue that a federal claim exists under Section 301 against the Town Defendants. In that case, local community groups sued the State of Maryland, several departments of the state, the Washington Suburban Sanitary Commission, the Montgomery County Council and the County Executive for injunctive relief to stop the discharge of pollutants into the Potomac River. The suit was brought under 33 U.S.C. § 1365(a) for violations of Section 1311(a). In deciding defendants’ motion to dismiss, the district court described the issue as “whether any of the defendants individually exercises an authority which directly or indirectly, controls the discharge of pollutants . . . . ” 366 F.Supp. at 267. The court found a claim was stated as against the Washington Suburban Sanitary Commission, the State of Maryland and various state officials and departments. The district court ruled that a claim was not stated as to the Montgomery County Council and the County Executive. The court reasoned as follows:
 

 [T]he complaint alleges that these defendants provide ‘direction and policy assistance on local governmental problems’ and ‘exercise ultimate authority ... to permit or deny any and all construction in the County.’ The complaint does not allege any authority over enforcement of water quality standards or sewer hookup permits. [Djefendants exercise no authority over the actions of the Washington Suburban Sanitary Commission other than to nominate and approve the County’s allotted share of Commission members. The alleged authority over County construction is too far beyond the pale of a requisite connection with the instant controversy to warrant imposition of relief.
 

 366 F.Supp. at 267.
 

 In the instant case, the allegations against the Town Defendants is similarly too remote from the Section 301 violation (to wit, the illegal discharge of pollutants) to state a claim for relief. The complaint alleges that the Town Defendants had the responsibility for the “review and approval of the Oakridge Project” (Complaint, ¶ 37), “including approval of the Environmental Impact Statement . . . . ”
 
 Id.
 
 It is alleged that the Town Defendants (i) approved a defective Environment Impact Statement; (ii) approved Phase I of the Oakridge Project which permitted construction; (iii) failed to enforce recommendations of officials and consultants who allegedly warned of the damage being caused; and (iv) failed to halt construction when they became aware of the pollution.
 

 Nowhere is it alleged that the defendants actually control the discharge of pollutants, or that the Town Defendants have the authority to issue orders prohibiting discharge, see,
 
 e.g., Montgomery Environmental Coalition v. Fri, supra,
 
 366 F.Supp. at 267, n.8. Moreover, it is not alleged that the permits issued by the Town Defendants did not prohibit the discharge of pollutants alleged. Also, the Town did not in any way own or operate the treatment works established to meet effluent limitations. Although it is asserted that the Town Defend7 ants should have halted development’s construction once they became aware of the pollution, there is no indication that the Town Defendants had more than the power to revoke its approval of the environmental impact statement and Phase I of the Oak-ridge Project. Although the Town Defendants may have been able to prevent some of the damage here and may consequently incur liability under state law as a result, the allegations in the complaint simply do not constitute violations of the prohibitions of Section 301 of the FWPCA.
 

 B.
 
 Section 404 Violation
 

 Plaintiff alleges in Count V of the complaint that the Town Defendants violated Section 404 of the FWPCA by approving the Environmental Impact Statement and authorizing commencement of Phase I of
 
 *837
 
 the Oakridge Project without requiring Oakridge to obtain a dredging permit. • The discharge of dredged material, generally prohibited under Section 301(a), can be authorized by the Secretary of the Army who “may issue permits after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites.” Section 404 of the FWPCA, 33 U.S.C. § 1344(a). Plaintiff alleges that no such permit was obtained.
 

 This claim appears to be a reiteration of the Section 301 claim, i.e., that the Town Defendants should have insured the Developers’ compliance with federal law. There is nothing in Section 404, however, which imposes a duty on local governments to insure that private parties secure a permit from the Secretary of the Army.
 
 [8]
 
 Accordingly, the Town Defendants cannot be liable to the plaintiff under this Section.
 

 The only remaining claims against the Town Defendants involve state common law claims. As the federal claims are dismissed there is no basis for the exercise of pendent jurisdiction over these claims and they accordingly must fall also.
 

 3. Developers’ Motion
 

 The Developers move to dismiss the complaint under Rules 12(b)(1), 12(b)(6) and 12(h)(3) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56.
 

 The Developers present two relevant arguments urging dismissal of the complaint. The first is that the state is presently diligently prosecuting an action against Oak-ridge for non-compliance with effluent standards. Developers point to 33 U.S.C. § 1365(b)(1)(B) which states that no citizen suit may be commenced under Section 505 of the FWPCA “if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order . . . . ” The second is that Section 404 of the FWPCA was not violated by Oak-ridge because,
 
 inter alia,
 
 it did not conduct “dredge and fill” activities. For the following reasons, I do not believe either argument justifies dismissal of the complaint.
 

 This action was brought under Section 505(a) of the FWPCA, 33 U.S.C. § 1365(a), which permits citizens suits against any person in violation of an effluent standard or limitation. Section 301 of the FWPCA makes it unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms.
 
 See EPA v. California ex rel. State Water Resources Central Board,
 
 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976). The complaint alleges that the Developers discharged sand, soil, solid waste and other pollutants into the stream leading onto plaintiff’s property. It is alleged that the Developers did not obtain a permit for these discharges. Plaintiff does acknowledge that a SPDES permit to discharge sewage effluent was obtained (Complaint, ¶ 22), but this permit did not cover other pollutants such as silt, sand and soil.
 

 There can be no question that this clearly alleges a violation of Section 301 and jurisdiction lies in this court under Section 505(a) for this plaintiff to obtain prospective relief.
 

 In addition, Developers’ argument that a proceeding instituted by the NYDEC bars this suit under Section 505(b)(1)(B) is mistaken. It is uncontroverted that on September 2, 1980, prior to commencement of this action, the NYDEC commenced a civil administrative action against Oakridge pursuant to the authority delegated to it by the Administrator of the EPA under the state permit program of the NPDES.
 
 See
 
 33 U.S.C. § 1342(b). The NYDEC alleged that Oakridge, in its excavation of the settling pond for the sewage, discharged silt, sand and rock in violation of water quality standards established by New York law. This action ultimately led to the parties
 
 *838
 
 entering into a consent order in February, 1981, which fined Oakridge $500 and prohibits further discharge of “any organic or inorganic substances in contravention of stream standards or any applicable permit issued to Oakridge.”
 

 As earlier described, an action under Section 505 is prohibited if the Administrator or state is already diligently prosecuting an action in á United States court.
 
 See
 
 33 U.S.C. § 1365(b)(1)(B). The administrative action here, however, does not constitute a bar to this lawsuit. It does not appear that the NYDEC enforced the environmental laws to the fullest extent possible. The NYDEC proceeding alleged only two occasions of polluting discharges: May 6, 1980 and June 10, 1980. The complaint filed September 8, 1980 in this action refers to continuing acts of pollution resulting from direct discharge of pollutants, erosion, and dredge and fill operations. These continuing violations were not the subject of the agency proceeding. Furthermore, no hearings were ever held and it does not appear that the plaintiff had the opportunity to intervene. This right of intervention is explicitly reserved to all persons whose citizens suits are precluded by 33 U.S.C. § 1365(bXl)(B).
 
 [9]
 
 The action was terminated by a consent order which fined Oakridge $500 and prohibited further discharge. From the alleged ongoing damages set out in the complaint
 
 [10]
 
 there is no showing on the record before me at this point that the NYDEC has sought to enforce this consent order.
 
 Cf. Gardeski v. Colonial Sand & Stone Co., Inc., supra,
 
 501 F.Supp. 1159, at 1166 (S.D.N.Y.1980) (NYDEC “failed to meet any reasonable test of diligent prosecution” after settlement was reached). Thus, the plaintiff’s interests have not been “diligently” represented at another proceeding and accordingly this action is not barred.
 

 The Developers next argue that no valid claim exists under Section 404 of the FWPCA. Section 404 provides in part:
 

 (a) The Secretary [of the Army] may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill materials into the navigable waters at specified disposal sites. * * * * * *
 

 Subsection (s) of Section 404 permits the Secretary of the Army to issue an order for compliance with any permits and authorizes the Secretary to commence a civil action for appropriate relief, including an injunction.
 

 Developers argue that this section is inapplicable because the complaint does not allege a discharge of “dredge or fill” materials but instead alleges a “point” discharge which would be covered by Section 402. The term “dredged material” is not defined in the FWPCA, but it is explained in the Army Corps of Engineer’s Regulations as “material that is excavated or dredged from waters of the United States.” 33 C.F.R. § 323.2(k). There is no dispute here that the Third Tributary and the adjoining wetlands are waters of the United States. The complaint alleges that “The Stream is ... an interstate waterway, and is, moreover, one of the waters of the United States .. . . ” (Complaint, ¶ 24). The plaintiff has clearly alleged that these areas were dredged. Furthermore, plaintiff asserts that these dredged materials were carelessly stockpiled resulting in the erosion of these materials into the stream and ultimately into plaintiff’s pond. (Complaint, ¶ 28).
 

 Developers urge that the erosion of these streams was a “point” discharge analogous to the situation in
 
 Sierra Club v. Abston Construction Co.,
 
 620 F.2d 41 (5th Cir. 1980) where the court ruled that sediment basin overflow and the erosion of piles of discard
 
 *839
 
 ed materials into a nearby river was a “point” discharge covered by Section 402. The court in
 
 Sierra Club,
 
 however, did not at all comment or rule on the potential illegality under Section 404. The allegations in the instant complaint fall within the proscriptions of Section 404 sufficiently to overcome this motion to dismiss.
 

 Despite the existence of a Section 404 violation, Developers argue that they have already been granted a nationwide permit under Corps of Engineer’s Regulations. Subject to the satisfaction of several criteria, 33 C.F.R. § 3234 permits the discharge of dredged or fill material without a Section 404 permit. As a preliminary matter, discharges into “[njontidal rivers, streams and their impoundments including adjacent wetlands that are located above the headwaters” do not require a permit. Developers argue that the plaintiff has failed to allege that these discharges occurred below the headwaters. Plaintiff is not required,, however, to plead all facts which would disprove every possible defense. The record before me does not show whether or not the extensive criteria of the Corps of Engineer’s Regulations have been met.
 
 [11]
 
 In any case, plaintiff has adequately plead a claim under Section 404.
 

 Developers have moved in the alternative for summary judgment on each of plaintiff’s claims. There appear to be numerous questions of material fact going to the nature of the discharged pollutants— whether they were dredged or fill, where the pollutants were discharged and whether Developers were responsible for this discharge. In sum, summary judgment is inappropriate here as to the claims against the Developers under Sections 301, 402 and 404 of the FWPCA.
 

 IV.
 

 Plaintiff’s Motion To Amend The Complaint
 

 Plaintiff has moved pursuant to Fed.R. Civ.P. 15(a) to amend the complaint to add claims against the Developers, the State Defendants and the Town Defendants. These claims assert that the defendants acts which were described in the original complaint and which the amended complaint describes in slightly greater detail have deprived plaintiff of his property without due process of law in violation of the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiff seeks revocation of the SPDES permit authorizing operation of the Oakridge wastewater treatment plant and the discharges therefrom. Plaintiff also requests that any discharges, as now contemplated by the SPDES permit, be enjoined. Finally, plaintiff wishes to supplement the complaint to assert that the acts previously alleged are ongoing and continuous.
 

 I turn first to plaintiff’s motion to amend the complaint under Fed.R.Civ.P. 15(a). Rule 15(a) provides that leave to amend “shall be freely given when justice so requires;” however, where the claims sought to be asserted are totally without merit and would result in a futile gesture, leave to amend should be denied.
 
 See Friedman v. Chesapeake and Ohio Railway Company,
 
 261 F.Supp. 728 (S.D.N.Y.1966),
 
 aff’d,
 
 395 F.2d 663 (2d Cir. 1968),
 
 cert. denied,
 
 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969). For several reasons, plaintiff’s Fourteenth Amendment and Section 1983 claims are without merit and therefore the motion for leave to amend the complaint must be denied.
 

 First, as against the State Defendants there has not been an adequate “taking claim” alleged in the proposed amendments.
 
 [12]
 
 Proposed Count 19 of the complaint alleges that the State Defendants have (a) failed to make any study of the impact of the Oakridge project on plaintiff’s pond; (b) have granted SPDES per
 
 *840
 
 mits for wastewater discharge and permits for dam construction; and (c) unlawfully failed to require a discharge permit authorizing the discharge of silt, sand and other pollutants. These acts have purportedly resulted in severe damage to plaintiff’s property and thus have resulted in a taking without due process with a consequent violation of Section 1983. (Proposed, Complaint, Count 20).
 

 Count 23 of the Proposed Complaint alleges a further taking by the State Defendants in that the sewage from the waste treatment plant authorized by the SPDES permit will result in the use of plaintiff’s pond- as a settling and treatment unit for wastewaters in order to protect downstream waters and the Siscowit Reservoir.
 

 These allegations simply do not amount to a “taking” of plaintiff’s property. The SPDES permits granted to the private defendants were issued pursuant to a law designed “to safeguard the waters of the state from pollution by preventing any new pollution and abating [existing pollution].” N.Y.Envir.Conserv.Law § 17 — 0103; § 17-0701. The permits issued by the State Defendants do not “authorize or encourage the private defendants to cause damage to plaintiff’s property . . . . ”
 
 Sun Enterprises, Ltd. v. Train,
 
 394 F.Supp. 211, 221 (S.D.N.Y.1975),
 
 aff’d,
 
 532 F.2d- 280 (2d Cir. 1976). The relationship between these permits and the alleged taking is simply too attenuated.
 

 As against the Town Defendants, the plaintiff alleges in the Proposed Complaint that the Town Defendants approved of the Oakridge project to begin with and aided and abetted the State Defendants in issuing the permit for discharging waste from the sewage treatment plant. According to plaintiff, these actions likewise resulted in a taking of property without due process and thus a violation of Section 1983.
 

 On its face, this claim appears to be nothing more than a reiteration of the claims under the FWPCA contained in the original complaint. As such, the proposed complaint clearly does not state a claim under Section 1983. The Supreme Court has held that Congress foreclosed a Section 1983 remedy under the FWPCA.
 
 See Middlesex County Sewage Authority v. National Sea Clammers Association, supra,
 
 - U.S. at-, 101 S.Ct. at 2626.
 

 In addition, the proposed complaint against the Town Defendants is unavailing because it does not allege the “execution of a government’s policy or custom ...” which inflicted the injury that the government as an entity is allegedly responsible for under Section 1983.
 
 See Monell v. New York City Dept. of Soc. Serv.,
 
 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, the complaint fails to show there was a taking by the Town Defendants for the same reasons there is no valid claim against the State Defendants. Whatever transgressions the Town Defendants are allegedly guilty of, the allegations do not rise to a constitutional taking.
 
 See Sun Enterprises, Ltd. v. Train,
 
 394 F.Supp. 211, 222 (S.D.N. Y.1975),
 
 aff’d,
 
 532 F.2d 280 (2d Cir. 1976).
 

 The proposed Section 1983 constitutional claim against the Developers must fall for the simple reason that there is no state action involved.
 
 Jackson v. Metropolitan Edison Co.,
 
 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).
 

 For the foregoing reasons, plaintiff’s motion for leave to amend the complaint is denied.
 

 The motion to supplement the complaint, however, presents a separate and different question. Rule 15(d) of the Federal Rules of Civil Procedure provides in part:
 

 Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.
 

 [20,21] The decision to grant leave to file this supplemental pleading is within the sound discretion of this court.
 
 See
 
 3 Moore’s
 
 Federal Practice,
 
 ¶ 15.16[3] (1980). Defendants do not offer any reason why permitting the pleading of these alleged ongoing violations would result in unfair
 
 *841
 
 ness or undue prejudice to them. Parts of the complaint have survived defendants’ various motions to dismiss. Accordingly, the motion to supplement the complaint as to those parts remaining is granted.
 

 To sum up the disposition of the motions:
 

 (a) the motions of the State and Town Defendants to dismiss the complaint are granted;
 

 (b) the motion of the Developers to dismiss is granted only insofar as the complaint seeks damages under federal law. In all other respects, the Developers’ motions are denied. As a result, this court will exercise pendant jurisdiction over plaintiff’s state law claims against the Developers;
 

 (c) the plaintiff’s motion to amend the complaint is denied; and
 

 (d) the plaintiff’s motion to supplement the complaint is granted insofar as the complaint involves allegations against the Developers.
 

 SO ORDERED.
 

 [1]
 

 . “On June 6, 1980 the Stamford Water Company reported that the turbidity of the stream at the entry point into the pond was 180 NTUs (a unit of turbidity measurement) as compared to 1 NTU on February 26, 1976, and was 140 NTUs at the stream outlet from the pond as compared to 1.1 on February 26, 1976.” (Complaint, ¶ 61).
 

 [2]
 

 . See 33 U.S.C. § 1341.
 

 [3]
 

 . See 33 U.S.C. § 1251(b).
 

 [4]
 

 . See 33 U.S.C. § 1314(h)(2); § 402(b)(l)-(9).
 

 [5]
 

 . See 33 U.S.C. § 1342(c)(1).
 

 [6]
 

 . The EPA approved of New York’s permit program in 1975.
 
 See Central Hudson Gas, etc. v. United States E.P.A.,
 
 587 F.2d 549, 554 (2d Cir. 1978).
 

 [7]
 

 . Plaintiff also brings a claim for federal common law nuisance. As earlier discussed, this claim is barred by the recent Supreme Court ruling in
 
 City of Milwaukee v. Illinois,
 
 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). The remaining claims against the Town Defendants are state law claims.
 

 [8]
 

 . Subsection (g) of § 404 does provide a mechanism for the state to assume the role of issuing dredge permits. From the record before me, however, it does not appear that New York State has in any way assumed this responsibility.
 

 [9]
 

 . “in any such action in a court of the United States any citizen may intervene as a matter of right.”
 

 [10]
 

 . The supplemental complaint alleging further ongoing damages was filed in January, 1981. The consent order was entered into in February, 1981. Although it would appear that this consent order would provide all the relief requested, subsequent affidavits by the plaintiffs attorney
 
 (e.g.,
 
 Primoff Affidavit, March 12, 1981) indicates that the damage has continued even after February. While merely an allegation and thus not dispositive, this is sufficient to raise serious questions as to NYDEC’s diligence in this matter.
 

 [11]
 

 . The criteria as to the application of these regulations include whether the wetlands area is tidal, the location of the discharge, and the discharges’ potential threat to wildlife.
 
 See generally,
 
 33 C.F.R. § 323.4.2.
 

 [12]
 

 . The “taking claim” is the basis of the § 1983 claim here. Any violation of the FWPCA cannot provide the basis for a § 1983 claim.
 
 See Middlesex County Sewage Authority v. National Sea Clammers Association,
 
 - U.S. -,
 
 *840
 
 ---, 101 S.ct. 2615, 2626, 69 L.Ed.2d 435 (1981).