**CAPITAL CITIES MEDIA, INC., t/d/b/a the Wilkes-Barre Times Leader and Robert Scheier, Assistant City Editor, Plaintiffs,**

v.

**James W. CHESTER, Regional Director, Northeast Region, Pennsylvania Dept. of Environmental Resources and Mark R. Carmon, Community Relations Coordinator, Northeast Region, Pennsylvania Dept. of Environmental Resources, Defendants.**

Civ. No. 84–1024.

United States District Court, M.D. Pennsylvania.

Feb. 1, 1985.

Ralph E. Kates, III, Wilkes-Barre, Pa., for plaintiffs.

John Embick, Philadelphia, Pa., Gregory R. Neuhauser, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff Capital Cities Media, Inc. brought this civil action pursuant to 42 U.S.C. §§ 1983, 1985; 28 U.S.C. §§ 1331, 1343 and the First and Fourteenth Amendments of the United States Constitution. Pendent jurisdiction was invoked by plaintiff to allege state causes of action arising under Article 2, § 7 of the Pennsylvania Constitution and 65 Pa.Stat.Ann. § 66.1 [Right to Know Act]. Named as defendants are Pennsylvania Department of Environmental Resources (DER); Nicholas DeBenedictis, Administrative Head and Secretary of DER; James W. Chester, Regional Director of the Northeast Region of DER; and Mark R. Carmon, Community Relations Coordinator for the Northeast Region of DER.

## I. FACTS

The essence of the complaint is that plaintiff has been denied access by DER to various documents [1] pertaining to the giardiasis contamination in particular water sources in the surrounding areas of Northeast Pennsylvania. Plaintiff asserts a "right to inspect and copy DER documents and records it has requested from these defendants in their official capacity since these DER documents and records are the official records of the DER, the public agency for which the defendants work and are themselves public records." Complaint, Document 3 of the Record at ¶ 8. A Motion to Dismiss and a brief in support thereof was filed by defendants August 30, 1984. A brief in opposition dated December 11, 1984 was filed by plaintiff to which defendants replied December 21, 1984. The motion is now ripe for disposition. For the reasons set forth below, the defendants' Motion to Dismiss will be granted.

Defendants assert that the complaint should be dismissed for lack of jurisdiction and failure to state a claim upon which relief can be granted. The court agrees.

### A. First Amendment

Plaintiff alleges "a right to that information which is part of the public record and the government has the burden of establishing the non-public nature of the information sought." Plaintiff's Memorandum of Law in Opposition to defendants' Motion to Dismiss, Document 20 of the Record at 17 n. 9. Thus, while plaintiff maintains it is *not* claiming a general right of access to governmental information under the First Amendment, plaintiff alleges that the withholding of the information it seeks does violate the First Amendment. *See id.* The court fails to see the distinction. Alleging that the withholding of documents violates the First Amendment necessarily implies an allegation that plaintiff has a right to access to those documents. In support, plaintiff cites John Milton, James Madison, James Monroe and Thomas Jefferson for the proposition that a right of access to governmental information is fundamental to our system of government. Plaintiff fails to cite, however, any opinion from the Supreme Court of the United States or our Third Circuit Court of Appeals which has held or implies that the First Amendment

---

1. Plaintiff has not been denied access to DER files totally. Indeed, plaintiff received a number of files. The controversy centers around various documents that were taken out of the files before plaintiff was given the opportunity to review them.

confers a right of access to governmental information in the context presented here.

In light of the absence of direct precedential support of plaintiff's position, a review of recent Supreme Court decisions is instructive on this issue. The issue of whether there is a First Amendment right of access to governmental information has been presented to the Supreme Court in a variety of contexts since the Court's pronouncement that "news gathering is not without its First Amendment protections." *Branzburg v. Hayes*, 408 U.S. 665, 707, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972).

In the prison setting, the Court has rejected the press' contentions that journalists have a right to conduct face-to-face interviews with specific inmates. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (Constitution does not require government to accord press special access to information not open to public generally); *Saxbe v. Washington*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974) (prohibition of personal interviews with inmates does not abridge freedom of press that First Amendment guarantees).

Later, in *Houchins v. KQED*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), the Court, again in a prison context, denied the media's challenge to a county prison's decision to close its doors and deny access to an area of the prison in which an inmate had committed suicide. Indeed, in *Houchins*, the Chief Justice writing the plurality opinion stated: "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to governmental information or sources of information within the government's control." *Id.* at 15, 98 S.Ct. at 2597. Justice Stewart, concurring, wrote: "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access

superior to that of the public generally." *Id.* at 16, 98 S.Ct. at 2597.

In *Gannett Co., Inc. v. DesPasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) the issue arose in the context of criminal trials. While upholding the trial judge's decision to exclude press and public from a pretrial hearing on a motion to suppress alleged involuntary confessions of defendants charged with robbery and murder, the court found it unnecessary to decide whether the First Amendment conferred a right to attend criminal trials.[2] This question was decided in *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) when a plurality of the Court held that the First and Fourteenth Amendments did confer a right, although not absolute, upon the press and public to attend criminal trials. Two years later, in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) the holding of *Richmond Newspapers, supra*, was re-affirmed when a majority of the court held that a Massachusetts statute, which required mandatory exclusion of press and public during the testimony of a minor sexually-abused victim, violated the First and Fourteenth Amendments. Justice Brennan wrote:

> Two features of the criminal justice system, emphasized in the various opinions in *Richmond Newspapers*, together serve to explain why a right of access to *criminal trials* in particular is properly afforded by the First Amendment. First, the criminal trial historically has been open to the press and general public.... Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and to society as a whole.

2. It was unnecessary to decide whether the factual setting of the case—trial as opposed to prison—was of any constitutional significance. The trial judge had appropriately concluded to close the pretrial hearing, even assuming *arguendo*, a First Amendment right of access. *Gannett, supra* at 392 & n. 24, 99 S.Ct. at 2912 & n. 24.

*Id.* at 2619–20 (emphasis in original) (footnote omitted). Justice O'Connor, concurring separately, emphasized that she interpreted the Court's decisions in *Globe* or *Richmond Newspapers* as having application only in the context of criminal trials. *Id.* at 2623.

Most recently, the Supreme Court held that the guarantees of open public proceedings in criminal trials extended to proceedings for the *voir dire* examination of potential jurors. *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

■ This court does not read these cases, separately or in the aggregate, to represent a consensus that the public or the media has a carte blanche right of access under the First Amendment to governmental information.

> With the exception of Justice Stewart's opinion for the Court in *Gannett,* Justice Brennan's opinion for the Court in *Globe,* and the Chief Justice's opinion for the Court in *Press-Enterprise Co. v. Superior Court,* none of the opinions on access to government information has enlisted the support of a majority of the Justices.[3]

The cases that have enlisted the support of the majority of the Justices have been in the context of criminal trials and this court does not believe that these holdings extend to a factual setting, such as the instant case, in which a party challenges the withholding of documents in the hands of a state agency.

**3.** *First Amend. Coalition v. Judicial Inquiry & Review Bd.,* 579 F.Supp. 192, 211 (E.D.Pa.1984).

**4.** Plaintiff maintains *Houchins, supra,* is "inapposite" because in *Houchins* the question presented was whether the media had a constitutional right of access to a penal institution *over and above* that of other persons. *Houchins, supra,* 438 U.S. at 3, 98 S.Ct. at 2590. The court does not agree. The media in *Houchins* argued a right of access to governmental information. Plaintiff argues that because it is seeking access to "public" records, and thus not claiming "special access," a First Amendment violation has been stated. The court does not accept this analysis.

Plaintiff appears to be focusing on the language that the press is not entitled to a right of access to governmental information greater than that of the public generally. By alleging, in a conclusory manner, that the documents plaintiff seeks are "public," plaintiff attempts to set forth a First Amendment violation.[4] The court notes that plaintiff is not alleging a case of prior restraint, *i.e.,* prohibiting the communication of information in plaintiff's possession nor is plaintiff alleging a case of sanction imposed for publishing information. Plaintiff's cause of action is premised on the theory that it is being denied documents that it wants to publish and that is a violation of the First Amendment. This theory was expressly rejected in *Houchins, supra.*

> There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy.... The public interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.[5]

*Houchins, supra,* at 14–15, 98 S.Ct. at 2596 (citing Stewart, *Or of the Press,* 26 Hastings L.J. 631, 636 (1975)). Based upon the foregoing discussion and review of the Supreme Court cases, the court believes plaintiff has failed to allege a violation of a First Amendment right under the present state of the law.[6]

**B. Equal Protection**

■ Plaintiff also alleges that the information it seeks has been released to others.

**5.** The court notes that the Freedom of Information Act is inapplicable to the instant action because it does not apply to state governments or officers.

**6.** Whether the documents plaintiff seeks are "public" documents would be more appropriately challenged under the Pennsylvania Right to Know Act. Because the court is without jurisdiction to hear that state claim, *see infra* at pp. 498–499, the court expresses no opinion on the merits of that issue.

This, plaintiff alleges, violates its right to equal protection under the laws and "[s]uch selectivity by the defendants is a sufficient ground, standing alone, to warrant jurisdiction in this court over this dispute." Document 20 of the Record at 20. Plaintiff asserts that because the information it seeks has been withheld and other information, unspecified by plaintiff, has been released to other people, an equal protection issue arises. The court disagrees. First, plaintiff does not identify the particular, insular group which is receiving unfair or discriminatory treatment. The only groups that can be discerned from plaintiff's averments are (1) those who have received the information they sought and (2) those who have not received the information they sought. Second, plaintiff does not even attempt to allege that the exact information was sought by all persons.[7] Based upon these assertions, the Equal Protection Clause has not been implicated. The court, therefore, will grant defendants' Motion to Dismiss on this issue.

## C.   State Law Claims

■■■ Plaintiff invokes the concept of pendent and ancillary jurisdiction to assert its state law claims against defendants. Pendent jurisdiction exists, as a matter of constitutional power, whenever the state and federal claims "derive from a common nucleus of operative facts" and are such that plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United States v. Gibbs,* 383 U.S. 715, 718, 725, 86 S.Ct. 1130, 1135, 1138, 16 L.Ed.2d 218 (1966). If constitutional power exists, the court may, in its discretion, retain the state law claim. In this instance, however, the state law claims must be dismissed

because the court is without jurisdiction to hear these claims. The Eleventh Amendment of the United States Constitution as interpreted by *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), proscribes suits brought by citizens against a state in federal court if the state has not consented to be sued in federal court. Thus, unless the Commonwealth of Pennsylvania has consented to suit in federal court, an action may not be maintained.[8] The Court in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*) considered the relationship between the Eleventh Amendment and pendent jurisdiction and concluded that the constitutional bar of the Eleventh Amendment also applies to pendent claims. 104 S.Ct. at 919. Plaintiff's analysis misconstrues the meaning of *Pennhurst II* in attempting to persuade the court that its state law claims are cognizable. The Supreme Court in *Pennhurst II* concluded "that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when ... the relief sought and ordered has an impact directly on the state itself." *Id.* at 917. Plaintiff is asking this court for injunctive relief and to "order the defendants to make all DER records available to plaintiffs for inspection and copying...." Document 1 of the Record at 4. Unquestionably, ordering defendant state officials or DER to release the documents plaintiff requests would operate as an order against the Commonwealth itself. Further, plaintiff does not allege and nothing in the record indicates that these officials were acting "without any authority whatever."[9] *See Allegheny County Sanitary*

---

7.  Plaintiff relies upon the Affidavit of Robert Scheider, Assistant City Editor for the Wilkes-Barre *Times Leader* as establishing plaintiff's Equal Protection claim. The affidavit, however, does nothing more than list other persons and groups known to the *Times Leader* to have been refused documents by DER. *See* Document 6 of the Record at 11–12. For example, it is averred that two environmental groups have had their requests for DER documents regarding various landfill sites denied. The affidavit does not demonstrate, as plaintiff infers in its brief, *see*

Document 20 of the Record, that the same documents plaintiff seeks and has been denied, have been released to others.

8.  The Commonwealth has specifically withheld consent to be sued in federal court. 42 Pa.Cons. Stat.Ann. § 8521(b) (Purdon 1982).

9.  Plaintiff does allege in its amended complaint that the defendants withheld the documents sought "without authority from DER or the Executive Branch of the Commonwealth's govern-

*Auth. v. United States Environmental Protection Agency*, 732 F.2d 1167, 1174 (3d Cir.1984). Accordingly, the court finds that plaintiff's state law claims are barred by the Eleventh Amendment and will be dismissed.

An appropriate Order will enter.

ment to make such a refusal." Document 3 of the Record at 4, ¶ 9. This allegation, however, stands alone. Documentation of DER's refusal to release certain papers to plaintiff (submitted by plaintiff) clearly demonstrates that officials were relying on DER policy albeit a policy contested by plaintiff.