RINGBOLT FARMS HOMEOWNERS
ASSOCIATION, Plaintiff,

v.

TOWN OF HULL, et al., Defendants.

Civ. A. No. 87–2524–N.

United States District Court,
D. Massachusetts.

March 27, 1989.

David Arons, Bruce A. Issadore, for plaintiff.

James B. Lampke, James A. Milkey, Asst. Atty. Gen., for defendants.

ORDER

DAVID S. NELSON, District Judge.

Magistrate's recommendation is hereby adopted, and pursuant thereto, motion to dismiss, *Allowed;* Motion to leave to file amended complaint, *Denied.*

REPORT AND RECOMMENDATION RE: DEFENDANT MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL QUALITY ENGINEERING'S MOTION TO DISMISS (DOCKET 5D) AND PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DOCKET 22)

PATTI B. SARIS, United States Magistrate.

This action arises from the alleged unlawful disposal of solid waste at, and discharge of pollutants into the Weir River from, a landfill in Hull, Massachusetts operated by the Hull Municipal Refuse Facility (the "Landfill"). Plaintiff Ringbolt Farms Homeowners Association ("Ringbolt Farms") consists of landowners who reside across the river in nearby Hingham. Defendants are the Town of Hull and the Town of Hull Board of Health (hereinafter collectively referred to as the "Town of Hull defendants"), and the Massachusetts Department of Environmental Quality Engineering ("DEQE").

The primary issue before the Court is whether plaintiff can properly bring an action against the DEQE in federal court for "breaching its duty" to enforce the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., and the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251 et seq. Although the case law on point is sparce, and there is no controlling precedent in this circuit, the Court concludes it cannot.

## PROCEDURAL BACKGROUND

The original complaint, filed on October 16, 1987, alleges in Count I that the Town of Hull defendants have violated and are violating the prohibition against open dumping contained in § 6945(a) of RCRA, and the regulations promulgated under RCRA, by discharging pollutants into surface waters of the United States without a valid permit as required under the National Pollutant Discharge Elimination System ("NPDES") and by failing to provide peri-

odic cover material or utilize other techniques to protect the public health. Count II alleges that the Town of Hull defendants have been and are in violation of the FWPCA, and regulations promulgated thereunder, by discharging pollutants into the Weir River and the adjacent wetlands without an NPDES permit authorizing the discharges. Counts III and IV further allege that the Town of Hull defendants have been and are in violation of Massachusetts statutory provisions, and certain regulations promulgated under these provisions, governing solid waste disposal, Mass. Gen.L. ch. 111, § 150A, and the discharge of pollutants into state waters, Mass. Gen.L. ch. 21, § 42.

The only cause of action asserted against the DEQE is contained in Count III of the complaint. In that count, plaintiff claims that the DEQE has failed to exercise its authority under the state's solid waste act, Mass.Gen.L. ch. 111, § 150A, "by not requiring and enforcing closure of an overcapacity Landfill and by not requiring operations to be performed in full compliance with federal and state law." (Docket 1C, ¶ 66).

On December 14, 1987, the DEQE filed a motion pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss all claims alleged against it by the plaintiff. (Docket 5D). Plaintiff opposes the motion to dismiss and has also filed a motion for leave to file an amended complaint in part to set forth "facts not reflected in the original Complaint which will adequately respond to Defendant DEQE's Motion to Dismiss." (Docket 22).

The amended complaint which plaintiff seeks to file adds certain officials at the DEQE as named defendants and alleges additional claims against the DEQE under RCRA and the FWPCA.[1] Specifically, plaintiff claims in Counts I and II of the amended complaint that the DEQE is "in ongoing violation" of these two federal statutes because it "has been aware of continued violations" of RCRA and the FWPCA and "has permitted the same,

---

1. The causes of action alleged in the amended complaint against the Town of Hull defendants are the same as the claims alleged against them in the original complaint.

thereby breaching its duty to enforce said federal provision[s]." (Amended Complaint, ¶¶ 53, 64). The DEQE opposes plaintiff's motion for leave to amend the complaint to add these claims on the grounds that the amendment would be futile and that plaintiff's actions exhibit a dilatory motive.

The DEQE's motion to dismiss and plaintiff's motion for leave to amend its complaint have been referred here for report and recommendation.[2] A hearing was held on the pending motions on June 16, 1988. The Court reserved ruling on the motions upon hearing that a settlement agreement was being negotiated between plaintiff and the Town of Hull, which might make the controversy with the DEQE moot. (*See* Docket 41). At a status conference on December 12, 1988, the Court informed the parties that it would issue a ruling on the pending motions unless it received notification of settlement within 30 days. To date, the Court has not received any notice of settlement from the parties. The Court RECOMMENDS that the DEQE's motion to dismiss be ALLOWED and that the plaintiff's motion for leave to amend the complaint be DENIED on the ground that amendment would be futile.

## FACTUAL BACKGROUND

The facts as alleged in the complaint and proposed amended complaint are as follows.

Ringbolt Farms is an unincorporated association of owners of land of a residential subdivision located at Ringbolt Road, Hingham, Massachusetts. (Complaint, ¶ 3; Amended Complaint, ¶ 3). The subdivision is located across the Weir River from the Landfill which is the subject of this lawsuit. (*Id.*). The Landfill is located in the Town of Hull and is bounded by Logan Avenue and the Weir River. (Complaint, ¶ 7; Amended Complaint, ¶ 10). It is owned by the Town of Hull and has been in operation for over 40 years, taking in solid waste brought by individual residents of the Town of Hull and by private collectors under contract with commercial and residential solid waste disposers. (Complaint, ¶¶ 4, 8–9; Amended Complaint, ¶¶ 4, 11–12).

Since the early 1970's, the DEQE and the Town of Hull have issued inspection reports citing the Landfill for violations of the state solid waste act, Mass.Gen.L. ch. 111, § 150A, and regulations promulgated thereunder, including insufficient daily and final cover, failure to control windblown litter, improper spreading and compacting of refuse, improper disposal of bulky wastes, improper grading and other continuing violations. (Complaint, ¶ 10; Amended Complaint, ¶ 13). The violations continued, and as a result, the DEQE issued an order dated May 20, 1977, requiring the Town of Hull to abate the conditions in violation of Mass.Gen.L. ch. 111, § 150A, and to submit to the DEQE a long-range solution for solid waste disposal. (Complaint, ¶¶ 11–12; Amended Complaint, ¶¶ 14–15). The Town of Hull did not and never has complied with the requirements of the DEQE order. (Complaint, ¶ 13; Amended Complaint, ¶ 16).

No later than May 1978, the DEQE determined that the Landfill was near full capacity and requested the Town of Hull to submit plans for final closure of the facility. (Complaint, ¶ 14; Amended Complaint, ¶ 17). SEA Consultants, Inc., an engineering firm, submitted a closure plan on May 16, 1978 which indicated that the remaining capacity of the Landfill was less than one year. (Complaint, ¶ 15; Amended Complaint, ¶ 18). From 1978 to 1984, the DEQE continued in correspondence to the Town of Hull to cite violations at the Landfill; the DEQE also requested plans from the Town of Hull for the final closure of the Landfill, stating in a letter written sometime after February 23, 1984 that "continued operation and/or expansion of the municipal refuse disposal facility off

---

**2.** A magistrate has the authority to determine any pretrial non-dispositive motion, which typically includes a motion to amend. Local Rule 2 of the Local Rules for Magistrates. Here, however, the ruling on the motion to amend is akin to ruling on a motion to dismiss since it addresses the legal sufficiency of the claim. Therefore, the Court will style its ruling on the motion to amend as a Report and Recommendation under Local Rule 3.

Logan Avenue in Hull is not an environmentally sound alternative for the Town and will not be allowed or tolerated" and that "definitive steps shall be taken for immediate closure of the existing operation." (Complaint, ¶ 16, Ex. 10; Amended Complaint, ¶ 19, Ex. 10).

Despite the DEQE's determination that closure of the Landfill was necessary, the Landfill was permitted to operate on an "interim basis" because of the Town of Hull's financial burdens in developing an alternative source of refuse disposal. (Complaint, ¶ 17–18; Amended Complaint, ¶ 20–21). Moreover, in contradiction of its own prior determination, the DEQE accepted plans from the Town of Hull in June 1984 for the eventual capping and sealing of the existing Landfill ("Phase 1") and expansion of the Landfill into certain adjacent parcels of land located to the west of Phase 1 ("Phase 2"), conditioning approval on, among other things, compliance with Mass.Gen.L. ch. 111, § 150A and the regulations promulgated thereunder. (Complaint, ¶ 19, 21; Amended Complaint, ¶ 22, 24). The DEQE allowed the phased operation and expansion of the existing Landfill because of the Town of Hull's financial burdens. (Complaint, ¶ 20; Amended Complaint, ¶ 23).

Despite the Town of Hull defendants' repeated assurances to the DEQE, Phase 1 of the Landfill continues to operate as an active facility. (Complaint, ¶ 22; Amended Complaint, ¶ 24). Phase 1 does not contain any liner and collection system for the purpose of recycling leachate, which is a pollutant, and the Landfill has had chronic problems with leachate generation and discharges into the Weir River and adjacent ground waters. (Complaint, ¶¶ 3, 24–25, 45; Amended Complaint, ¶¶ 3, 27–28, 50). In addition, sewage sludge has been and may presently be disposed of at the Landfill without a permit. (Complaint, ¶ 27; Amended Complaint, ¶ 30).

Although the Landfill discharges leachate into the Weir River and adjacent wetlands, the Town of Hull defendants have never applied to the Environmental Protection Agency ("EPA") for a NPDES permit allowing such discharges. (Complaint, ¶¶ 45–46, 55–56; Amended Complaint, ¶¶ 50–51, 61–62). Moreover, the Town of Hull defendants have never applied for a state ground water or surface water discharge permit as required under state law; nor have such permits been issued by the DEQE's Division of Water Pollution Control. (Complaint, ¶ 74; Amended Complaint, ¶ 81).

On June 2, 1987, Ringbolt Farms filed a petition for rescission of assignment of the Landfill with the DEQE, and requested a public hearing on the petition. (Complaint, ¶ 28, Ex. 19; Amended Complaint, ¶ 31, Ex. 19). Although Ringbolt Farms was initially informed by the DEQE that a public hearing would be granted, on or about July 20, 1987, counsel for DEQE informed Ringbolt Farms that a public hearing would not be held. (Complaint, ¶¶ 29–30; Amended Complaint, ¶¶ 32–33). On or about July 23, 1987, the Town of Hull and the DEQE entered into a Consent Order regarding the Landfill. (Complaint, ¶ 31, Ex. 20; Amended Complaint, ¶ 34, Ex. 20).

Under the terms and conditions of the Consent Order, the Town of Hull was required to complete specific remedial measures within a specified time frame. (Complaint, ¶ 32; Amended Complaint, ¶ 35). The Consent Order also provided for the imposition of penalties by the DEQE on the Town of Hull if it failed to comply with the terms and conditions of the order. (Complaint, ¶ 34; Amended Complaint, ¶ 37). The Town of Hull has not fully complied with the terms and conditions of the Consent Order, and to date, the DEQE has not imposed any penalties on the Town of Hull despite its noncompliance. (Complaint, ¶¶ 33, 35; Amended Complaint, ¶¶ 36, 38). Moreover, the DEQE has never instituted legal action to enforce compliance with its Order of May 20, 1977 requiring the Town of Hull to abate the conditions at the Landfill which are in violation of Mass.Gen.L. ch. 111, § 150A. (Complaint, ¶ 13; Amended Complaint, ¶ 16).

The DEQE has submitted two affidavits in support of its argument that amendment of the complaint to add causes of action

against it under RCRA and the FWPCA would be futile. In one affidavit, William Gaughan, Chief of the DEQE's Regulatory Branch of the Division of Water Pollution Control since 1981, states that the FWPCA established the NPDES program which requires permits for the discharge of pollutants into navigable waters; that the FWPCA and regulations promulgated under this act authorize the delegation of the NPDES permitting program to individual states; and that the Commonwealth of Massachusetts has never been delegated authority to administer the federal NPDES program. (Docket 39, Attachment A, ¶ 4). Gaughan also states that the permit program administered by the DEQE for wastewater discharges to surface waters is under state law, Mass.Gen.L. ch. 21, and that these permits "do not have a comparable federal counterpart and are issued without the involvement of the EPA." (*Id.* ¶¶ 3, 6).

Beatrice Nessen, Chief of the DEQE's Policy and Regulations Development Section of the Division of Solid Waste, also submitted an affidavit. She says that she has reviewed the DEQE's files regarding the agency's planning activities under Subtitle D of RCRA. (*Id.*, Attachment B, ¶ 3). These files indicate that the most recent state solid waste plan submitted to the EPA pursuant to Subtitle D was for the period from January 31, 1981 to January 31, 1986. (*Id.*, ¶ 4). Nessen states that it is her understanding that the plan was approved by the EPA. (*Id.*). She also states that the DEQE has not submitted a state solid waste plan pursuant to Subtitle D for the period subsequent to January 21, 1986, and that the files indicate that Massachusetts has not received any Subtitle D funding since Fiscal Year 1981. (*Id.*, ¶¶ 4–5).

## DISCUSSION

### A. DEQE'S MOTION TO DISMISS

■ The DEQE's motion to dismiss is based on the claim alleged against it in the original complaint that it has been and is in violation of Mass.Gen.L. ch. 111, § 150A, because it has not required and enforced closure of the Landfill and because it has not required operations at the Landfill to be performed in full compliance with federal and state law. This claim asserted against the DEQE is contained in Count III under the title "State Law Violations—Operation of facility in violation of the performance standards established under G.L. c. 111, [§] 150A."

The DEQE argues that this claim should be dismissed because this Court is precluded from reviewing the claim by the eleventh amendment of the United States Constitution.[3] The Supreme Court has held that a claim against state officials for violation of *state* law in carrying out their official duties is one against the State itself and is therefore barred from review by a federal district court by the eleventh amendment, even where the relief sought is prospective in nature. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) ("*Pennhurst II*") (reversing Court of Appeals decision that pendent state law claim was not barred from federal court review by the eleventh amendment in action against a state institution for the mentally retarded, which alleged that conditions at the institution violated various federal constitutional and statutory rights of the institution's residents, as well as state law). The Court stated:

A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

---

**3.** The DEQE also argues that plaintiff has failed to state a claim upon which relief can be granted because plaintiff "in essence is seeking mandamus relief requiring DEQE officials to enforce the Solid Waste Disposal Act," which is inappropriate here. The Court will not address this argument since it concludes that review of the claim is barred by the eleventh amendment.

*Id.* The Court further concluded that "this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* at 121, 104 S.Ct. at 919.

Applying *Pennhurst II,* courts have held that the eleventh amendment precludes federal court review of claims against state environmental agencies for failure to enforce *state* environmental laws, even where such claims are pendent and asserted along with federal claims. *See, e.g., Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167, 1173–74 (3d Cir.1984); *Capital Cities Media, Inc. v. Chester,* 609 F.Supp. 494, 498–99 (M.D.Pa.1985), *aff'd in part on same ground and rev'd in part on other grounds,* 797 F.2d 1164, 1176 (3d Cir.1986); *Reeger v. Mill Service, Inc.,* 592 F.Supp. 1266, 1268 (W.D.Pa.1984). *See also Middlesex County Board of Chosen Freeholders v. New Jersey,* 645 F.Supp. 715, 722 (D.N.J.1986) (in allowing plaintiff's claim against the state for noncompliance with the federal RCRA statute, the court warned plaintiff that "it may not indirectly seek to force compliance with the various state regulatory schemes").

Here, plaintiff has conceded in its memorandum in opposition to the motion to dismiss that the eleventh amendment precludes review of any claims alleged against the DEQE under state law. (*See* Docket 16, pgs. 3–4, 6). Plaintiff argues, however, that this Court does have jurisdiction to review any claims against the state for noncompliance with the federal statutes— RCRA and FWPCA. (*Id.,* pgs. 4–5). However, Count III of the original complaint only alleges a state law cause of action against the DEQE for failure to exercise its authority under Mass.Gen.L. ch. 111, § 150A. Although the count does allege that the DEQE has not required operations at the Landfill to be performed in full

compliance with federal law, no separate cause of action is asserted against the DEQE under RCRA or the FWPCA in the complaint. Accordingly, the Court RECOMMENDS that the DEQE's motion to dismiss be ALLOWED.

## B. PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff has filed a motion for leave to amend the complaint to add claims against the DEQE under RCRA and the FWPCA.[4] In Counts I and II of the proposed amended complaint, plaintiff alleges that the DEQE has permitted continued violations of RCRA and the FWPCA thereby breaching its duty to enforce these federal statutes. The DEQE argues that the motion to amend should be denied on the ground that amendment would be futile since neither RCRA nor the FWPCA authorize suits against state regulators for failing to enforce these statutes against entities that improperly discharge or handle pollutants. (Docket 27, pg. 8).[5]

Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The legal insufficiency of a proposed amendment, or the futility of amendment, may be considered as a basis for denying a motion for leave to amend. *See Liberty Leather Corp. v. Callum,* 653 F.2d 694, 700 (1st Cir.1981); *Grand Sheet Metal Products Co. v. Aetna Casualty & Surety Co.,* 500 F.Supp. 904, 907 (D.Conn.1980).

The Court will address the legal sufficiency of plaintiff's claims against the DEQE under RCRA and the FWPCA separately below. As an initial matter, in determining whether or not amendment would be futile in this case, the Court must first look to the statutory language contained in

---

**4.** The amended complaint also alleges the same state claim against the DEQE as is alleged against it in the original complaint. This Court has concluded that it is barred by the eleventh amendment from reviewing the state claim. *See supra* pgs. 1250–51. In any event, plaintiff's counsel stated at the June 16, 1988 hearing that the state law claim is in the amended complaint only out of "mere inadvertence."

**5.** The DEQE also raises other arguments in opposition to the motion to amend. The Court will not address these arguments since it concludes that the motion to amend should be denied on the ground that neither RCRA nor the FWPCA provide for a cause of action against a *state* environmental agency for failure to enforce their provisions.

these statutes, particularly to the provisions concerning enforcement and relief. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981) (*"Sea Clammers"*); *see also Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, ——, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987) (*"Gwaltney"*) ("[i]t is well settled that 'the starting point for interpreting a statute is the language of the statute itself' "). Then the Court will review the legislative history and other traditional aids of statutory interpretation to determine congressional intent. *Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2623. It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. *Id.* at 14–15, 101 S.Ct. at 2623–24.

### 1. *FWPCA*

Plaintiff alleges in Count II of the proposed amended complaint that the DEQE is in ongoing violation of 33 U.S.C. § 1311(a) by failing to enforce this provision of the FWPCA which prohibits the discharge of any pollutant except in accordance with an NPDES permit authorizing the discharge. (Amended Complaint, ¶¶ 60, 64). Plaintiff asserts the Court has jurisdiction over this claim under 33 U.S.C. § 1365(a), which is the provision in the statute authorizing citizen suits. Section 1365(a) provides:

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure to perform any act or duty under this chapter which is not discretionary with the Administrator. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

The FWPCA defines "Administrator" as the Administrator of the EPA. 33 U.S.C. § 1251(d). There is no language contained in either § 1365(a)(1) or (a)(2) which clearly provides for a cause of action against a *state* regulatory agency for failure to enforce the provisions of the statute.

The FWPCA contains "unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens." *Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2623. A review of the statute and the legislative history behind it indicates that Congress did not contemplate any remedy under the statute against the states for failure to enforce the provisions of the FWPCA other than the denial or withdrawal of approval of state plans by the Administrator of the EPA.

The FWPCA as originally enacted in 1943 emphasized state enforcement of water quality standards. *Id.* at 11, 101 S.Ct. at 2622. When this legislation proved ineffective, Congress passed amendments to the statute in 1972 to shift the emphasis to direct restrictions on discharges. *Id.* The amendments made it unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms. *Id.* Moreover, while still allowing for state administration and enforcement under federally approved state plans, the amendments created various federal minimum effluent standards. *Id.*

33 U.S.C. § 1342 established the NPDES permit program which plaintiff claims the DEQE has failed to enforce here. Under this section, states are permitted to administer their own permit programs in lieu of the federal program. *See* 33 U.S.C.

§ 1342(b)–(c).[6] Before a state desiring to administer its own program can do so, the Administrator's approval is required and the state must demonstrate, among other things, adequate authority to abate violations through civil or criminal penalties or other means of enforcement. 33 U.S.C. § 1342(b)(7); *see also Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2623. Once approved, the state programs are administered under *state* law. *See California v. United States Dep't of Navy*, 845 F.2d 222, 225 (9th Cir.1988) (holding that the court did not have federal jurisdiction under 33 U.S.C. § 1342(b)(7) over state's claim against the defendant for alleged violations of a state water pollution discharge permit issued under federally approved state plan).

At various places in the original Senate Report on this provision, there is mention of the concept of the Administrator's "delegation of authority" to the states. S.Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 3668, 3736. However, those references in passing do not measure up against more specific statements contained in the legislative history that the states' programs were to be based on their own authority, not on a delegation of federal authority. See *California v. United States Dep't of Navy*, 845 F.2d at 225; *Mianus River Preservation Committee v. Administrator*, 541 F.2d 899, 905 (2d Cir.1976) (citing specific passages). *See also* H.R.Rep. No. 830, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin.News 4326, 4327, 4479 (stating that the state permit programs are "not a delegation of Federal authority," but instead are state programs which "function[] in lieu of the Federal program").

Here, the DEQE has submitted undisputed evidence that the Administrator has not approved Massachusetts' permit program under § 1342 to allow the state to administer its own program in lieu of the federal program. Therefore, as a factual matter, the DEQE has demonstrated the futility of an amendment since plaintiff has presented no conceivable theory under which the state failed to perform a duty under the FWPCA, as required by 33 U.S.C. § 1365(a)(2).

However, even assuming that the Massachusetts program were approved by the Administrator, the only provision in the FWPCA for a *federal* remedy against the state for failure to enforce its permit requirements is contained in § 1342(c). Section 1342(c) provides that the Administrator "shall withdraw approval" if determined after public hearing that the state is not administering its program in accordance with the requirements of the act and after notice to the state allowing a reasonable time for taking appropriate corrective action.

There are enforcement provisions contained in the statute for relief against violators of the FWPCA and against the Administrator due to actions or omissions on his part, but none of these provisions contains any mechanism for relief against the state itself except to the extent that the state is an actual discharger of pollutants in violation of the act. Specifically, 33 U.S. C. § 1369(b) provides that "any interested person" may bring suit in the United States Court of Appeals for judicial review of specified actions of the Administrator, including establishment of effluent standards and issuance of permits for the discharge of pollutants. *See also Sea Clammers*, 453 U.S. at 13–14, 101 S.Ct. at 2622–23.[7] However, no comparable provision was enacted for judicial review of any such actions by a state. *See Mianus River Preservation Committee v. Administrator*, 541 F.2d at 902 (refusing to extend the jurisdictional grant contained in 33 U.S.C.

**6.** A similar provision was enacted with respect to state administration of permit programs for the discharge of dredged or fill material into navigable waters. *See* 33 U.S.C. § 1344(g)–(i).

**7.** 33 U.S.C. § 1365(h) also provides that a governor of a state may commence action against the Administrator where there is alleged a failure of the Administrator to enforce an effluent standard or limitation in another state which is causing an adverse effect or a violation of a water quality requirement in his state.

§ 1369(b) to cover state's action in administering its federally approved permit program).

Section 1319 also authorizes the Administrator to respond directly to violations of the FWPCA by persons unlawfully discharging pollutants into navigable waters with compliance orders and civil suits. Specifically, § 1319(a)(1) provides:

> Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any condition or limitation which implements section 1311 ... in a permit issued by a State under an approved permit program under § 1342 ..., he *shall* proceed under his authority in paragraph (3) of this subsection or he shall notify the person in alleged violation and such State of such finding. If beyond the thirtieth day after the Administrator's notification the State has not commenced appropriate enforcement action, the Administrator *shall* issue an order requiring such person to comply with such condition or limitation or shall bring a civil action....

(Emphasis added). Section 1319(a)(3) provides that if "the Administrator finds that any person is in violation of section 1311, ... he *shall* issue an order requiring such person to comply with the section ..., or he *shall* bring a civil action." (Emphasis added). No provision is contained in § 1319 for any remedy against the state itself for failure to enforce § 1311, the provision prohibiting discharges of any pollutants except in accordance with a permit, or any other provisions of the FWPCA.

Some courts construing the § 1319 enforcement provisions have held that the mandatory term "shall" contained in the provisions creates a non-discretionary duty on the part of the Administrator to at least issue compliance orders against violaters of the FWPCA, which is actionable under the citizen suit provision contained in § 1365(a)(2). *See, e.g., Greene v. Costle,* 577 F.Supp. 1225, 1227–30 (W.D.Tenn. 1983); *South Carolina Wildlife Federation v. Alexander,* 457 F.Supp. 118, 134 (D.S.C.1978); *Illinois ex rel. Scott v. Hoffman,* 425 F.Supp. 71, 76–77 (S.D.Ill.1977).

*But see Dubois v. Thomas,* 820 F.2d 943, 946–51 (8th Cir.1987) (following a line of cases representing the "majority view" that the duties imposed on the Administrator under § 1319 are discretionary, and dismissing the FWPCA claim against the Administrator and Regional Administrator of the EPA for lack of subject matter jurisdiction).

Even assuming, without deciding, that § 1319 creates a non-discretionary duty on the part of the Administrator allowing for a private cause of action against him under § 1365(a)(2) for failure to enforce the provisions of the FWPCA, there is no analogous provision in the statute creating a non-discretionary enforcement duty on the part of a *state* regulatory agency.

Moreover, there is no provision in the statute permitting the delegation of the Administrator's enforcement duties under § 1319 to the states. *See California v. United States Dep't of Navy,* 845 F.2d at 224–25 (holding that state could not bring enforcement action under § 1319 against federal dischargers because Congress intended that the provision be utilized solely by the Administrator). *Cf. Mianus River Preservation Committee v. Administrator,* 541 F.2d at 903, 906 (in rejecting the argument that the state agency was serving under the "delegation of authority" theory as the Administrator's agent in acting upon NPDES permits, the court stated that "Congress did not intend to relegate the States to the status of enforcement agents for the executive branch of the government"). Indeed, such an interpretation of the statute would not make sense because § 1319 expressly provides that the *Administrator* is to take the enforcement actions against violators even when the violations occur under an approved state program and even when the violations are so widespread that they appear to result from a failure of the state to enforce its permit program. *See* 33 U.S.C. § 1319(a)(1)–(2).

Given that there are no provisions in the FWPCA'S elaborate enforcement scheme creating non-discretionary enforcement duties on the part of the state, or permit-

ting enforcement remedies against the state other than the denial or withdrawal of approval of state plans, the Court concludes that neither § 1365(a)(1) nor (a)(2) was intended to allow for a cause of action against a state regulatory agency for failure to enforce the provisions of the act. *Cf. Sea Clammers,* 453 U.S. at 14–15, 18, 101 S.Ct. at 2623–24, 2625 (in a case where plaintiffs were precluded from relief under § 1365 because they failed to comply with notice requirements set forth in that provision, the Court held that there is no implied private right of action under the FWPCA independent of the citizen suit provision and concluded that, in view of the elaborate enforcement provisions contained in the act and "in the absence of strong indicia of contrary congressional intent, ... Congress provided precisely the remedies it considered appropriate"); *Latinos Unidos de Chelsea en Accion (LUCHA) v. Secretary of Housing & Urban Development,* 799 F.2d 774, 792–93 (1st Cir.1986) (finding no private right of action against HUD under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631, for failing to enforce anti-discrimination provisions against a town charged with discriminating against minorities in housing, particularly in light of the multi-faceted enforcement scheme expressly set out in the statute).

The legislative history behind the enactment of the citizen suit provision supports this conclusion as it indicates the provision was adopted to supplement the various enforcement mechanisms, not to supplant or add to them. *See Gwaltney,* 484 U.S. at —— – ——, 108 S.Ct. at 382–84 (holding that the citizen suit provision of the FWPCA was not intended to permit citizen suits for wholly past violations of the act and that a contrary interpretation of the "scope of the citizen suit would change the nature of the citizens' role from interstitial to potentially intrusive"); *see also Sea Clammers,* 453 U.S. at 14, 101 S.Ct. at 2623. As stated in *Gwaltney,* the "central purpose" of the citizen suit provision is to permit "citizens to abate pollution when the government cannot or will not command compliance." 484 U.S. at ——, 108 S.Ct. at 384.

The Senate Report noted that the citizen suit provision permits the initiation of a civil suit against a "person who is alleged to be in violation of an effluent limitation or a Federal or State abatement order, or against the Administrator for failure to perform a non-discretionary act." S.Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 3668, 3744. The Court has found nothing in the legislative history which would lend support to any argument that the citizen suit provision was intended to provide a cause of action against a *state* official, even one acting under a federally authorized plan.

Plaintiff has cited only one case in support of its argument that § 1365 was intended by Congress to permit a citizen suit against a state regulatory agency like the DEQE for its failure to enforce the FWPCA against polluters. *See Montgomery Environmental Coalition v. Fri,* 366 F.Supp. 261 (D.D.C.1973) *("Fri"),* decided one year after the citizen suit provision was enacted. In *Fri,* the court held that plaintiffs had stated a claim under § 1365(a)(1) against various state entities that had the authority to issue orders prohibiting the discharge of wastes into Maryland waters because they had allowed the channelling of sewage into a particular treatment facility that was discharging pollutants into the Potomac River. *Id.* at 267. Without addressing the language contained in the citizen suit provision or the legislative history of the FWPCA, the court stated that the "proper inquiry should be into whether any of the defendants individually exercises an authority which directly or indirectly controls the discharge of pollutants from the [treatment] plant." *Id.* at 266–67.

However, in *O'Leary v. Moyer's Landfill, Inc.,* 523 F.Supp. 642, 647 (E.D.Pa. 1981) *("O'Leary"),* the court disagreed with the reasoning in *Fri.* As in this case, *O'Leary* involved a claim by plaintiffs under § 1365(a) against a state environmental agency for failure to enforce a Consent Decree order requiring a landfill's closure should it be found to be discharging pollutants into a nearby creek. *Id.* at 647. In

*O'Leary,* the court refused to follow *Fri* and dismissed the claim against the state environmental agency on the ground that plaintiffs had not stated a cause of action against it. *Id.* at 647–48. The court reasoned:

> [T]he Act's grant of citizen suit jurisdiction does not, in my judgment, lend support to a standard so broadly stated [in *Fri*]. The Act authorizes citizen suits against (1) those alleged to be "in violation" of the Act's limitations, and (2) the Environmental Protection Agency (EPA), through its administrator, upon the EPA's failure to perform a non-discretionary act. And it may be noted that Judge Smith, at a later stage of *Fri,* dismissed EPA as a defendant for lack of an allegation of EPA's failure to perform non-discretionary acts.
>
> *The ordinary sense of the "in violation" phrase in section 1365(a)(1) connotes defendants who are themselves the instrumentality discharging pollution; the jurisdictional grant does not in terms create responsibility on the part of a regulatory agency charged with the enforcement of standards— even where the agency decides against enforcement....* And, were the EPA liable in every case together with a regulated polluter under section 1365(a)(1), the meaning of section 1365(a)(2) would be eviscerated; for that section authorizes suit against the agency for failure to perform *non*-discretionary acts, a notion that loses most of its substance when all enforcement is mandated.

*Id.* (citations and footnote omitted) (emphasis added and in original).

In *O'Leary,* the court assumed, without deciding, that for purposes of construing § 1365(a)(2)'s authorization to sue the EPA Administrator, "the state agency may be held to stand in the federal agency's place by virtue of the state's role in the enforcement of the statute." [8] *Id.* at 648 n. 2. However, even under this assumption, the court dismissed the suit against the state for failure to enforce federal law, holding that the citizen suit provision did not authorize suits against the state or federal agencies for discretionary acts—like enforcement of a consent decree.

Other courts have held that persons seeking to bring an action under the citizen suit provision of the FWPCA "are limited by the Act to (1) those who violate an effluent standard or an order issued with respect to such a standard, and (2) the federal administrator for the failure to perform non-discretionary acts or duties." *See, e.g., Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167, 1175 (3d Cir.1984) (dismissing claims against state defendants alleging that they violated the FWPCA by improper administration of the act's construction grant program which resulted in plaintiff not being promoted to "fundable" status), *aff'g,* 557 F.Supp. 419, 423–25 (W.D.Pa.1983). *See also Love v. New York State Dep't of Environmental Conservation,* 529 F.Supp. 832, 839–41 (S.D.N.Y.1981) (holding that the court lacked subject matter jurisdiction under 33 U.S.C. § 1365(a) over plaintiff's claims against state environmental agency administering federally approved state permit program where claims did not allege that the state defendants were actually dumping wastes into a stream in violation of an effluent standard, but rather that they had "aided and abetted" the pollution by both failing to require certain permits and by granting other permits despite knowledge of ongoing pollution caused by the project).

Here, the Court is similarly persuaded that Congress did not intend the citizen suit provision to permit a cause of action against the states for any improper administration of their regulatory duties or for any failure to enforce the provisions of the FWPCA against polluters. Even if the DEQE were administering a federally approved permit program here, the proper forum for such a claim would be state court rather than federal court because a state law determination would be involved. *See Love,* 529 F.Supp. at 840 ("[t]o contest the state's issuance of [a discharge permit under federally approved state program],

---

**8.** As discussed earlier at pg. 1254, *supra,* this Court disagrees with this assumption.

plaintiff's remedy is in [a] .... proceeding in the state court"). *Cf. United States v. Marathon Development Corp.*, 867 F.2d 96, 102 (1st Cir.1989) (stating that any defect in the state's more stringent water quality certification program is properly redressed in state court rather than federal court).

Accordingly, the Court concludes that plaintiff should not be allowed to amend its complaint to add the claim under the FWPCA against the DEQE. Such a claim is legally insufficient and amendment therefore would be futile.

### 2. RCRA

█ Plaintiff alleges in Count I of the proposed amended complaint that the DEQE is in ongoing violation of 42 U.S.C. § 6945(a), which prohibits the open dumping of solid waste, by failing to enforce this provision of RCRA against the Landfill. (Amended Complaint, ¶¶ 53–54).[9] Specifically, plaintiff claims that the DEQE is permitting practices at the Landfill which by regulation constitute "open dumping" practices under RCRA because they fail to satisfy certain criteria established by regulation. *See* 40 C.F.R. § 257.1(a) (1988). The particular criteria which plaintiff claims are being violated by the Landfill are contained in 40 C.F.R. § 257.3–3(a) and § 257.3–6. (Amended Complaint, ¶¶ 47–48). 40 C.F.R. § 257.3–3(a) provides that "a facility shall not cause a discharge of pollutants into waters of the United States that is in violation of the requirements of the [NPDES program under the FWPCA]." 40 C.F.R. § 257.3–6(a) provides that a "facility or practice shall not exist or occur unless the on-site population of disease vectors is minimized through the periodic application of cover material or other techniques as appropriate so as to protect the public health."

#### a. *Citizen Suit Provision.*

Plaintiff asserts the Court has jurisdiction over this claim under 42 U.S.C. § 6972(a), which is the provision in the RCRA statute authorizing citizen suits. Section 6972(a) provides in relevant part:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

.... The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to

---

**9.** Neither the original complaint nor the proposed amended complaint contains any allega-

tions pertaining to the dumping of "hazardous" wastes.

in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 6928(a) and (g) of this title. As in the FWPCA, "Administrator" is defined in RCRA as the Administrator of the EPA. 42 U.S.C. § 6903(1). The provision set forth in § 6972(a)(1)(B) was not in the original citizen suit provision enacted in 1976, but rather was added in an amendment to the statute in 1984.

The language contained in § 6972(a)(1)(A) and (a)(2) of RCRA is substantially the same as the language contained in § 1365(a)(1) and (a)(2) of the FWPCA's citizen suit provision discussed above. *Cf. Gwaltney*, 484 U.S. at ——, 108 S.Ct. at 382 (in analyzing the meaning of the phrase "to be in violation" contained in the FWPCA's citizen suit provision, the Court noted that "Congress used identical language in the citizen suit provisions of several other environmental statutes," including RCRA).

Indeed, in *O'Leary*, which was decided before the citizen suit provision was amended in 1984 to add § 6972(a)(1)(B), Judge Pollak in an unpublished bench opinion stated that the citizen suit provisions contained in RCRA and the FWPCA use "virtually identical jurisdictional language." (Docket 39, Attachment D, pg. 5). In the bench opinion, Judge Pollak granted the defendant state environmental agency's motion to dismiss claims against it under *both* statutes for lack of jurisdiction. (*Id.*, pg. 13).[10] The court reasoned:

> Under both Acts, what is alleged is that DER has not carried through in its enforcement obligations with respect to federal standards. As I understand the structure of the citizen suit provisions, *both of them*, suit is permitted against any person, including a governmental agency, to the extent that such an agency may have been suable otherwise, where that person is "in violation" in the sense that the defendant instrumentality is itself engaged in doing the pollution, as for example, a state agency might be

that was directly involved in land management or water allocation or sewage disposal or some related activity.

\* \* \* \* \* \*

> In construing 1365(a) and 6972(a) as I do, I am reinforced in my view that the ordinary range of enforcement decisions are insulated from citizen suit by the language which is verbatim the same in both statutes which authorizes in each instance a citizen suit "against the Administrator" and I interpolate again this means the Environmental Protection Agency Administrator "where it is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."

(*Id.*, pgs. 8–10) (emphasis added).

After a review of the statute and legislative history, this Court is also persuaded that jurisdiction cannot be asserted by plaintiff against the DEQE under either § 6972(a)(1)(A) or (a)(2) for failure to meet enforcement obligations under the act, including any obligation to enforce the statute's prohibition against open dumping set forth in 42 U.S.C. § 6945(a).

Under RCRA, the EPA Administrator is required to promulgate regulations containing guidelines to assist in the development and implementation of state solid waste management plans. 42 U.S.C. § 6942(b). Pursuant to 42 U.S.C. § 6946, the governor of each state must promulgate regulations based on the federal guidelines for the purpose of developing and implementing a state solid waste plan. Each state plan must comply with certain specified minimum requirements, listed in 42 U.S.C. § 6943(a), including the "establishment of such State regulatory powers as may be necessary to implement the plan." *See* 42 U.S.C. § 6943(a)(4). In addition, for purposes of complying with certain of the requirements in § 6943(a), each state plan must "contain a requirement that all existing disposal facilities or sites for solid waste in such State which are open dumps

---

**10.** The facts of the case are discussed above at pgs. 26–27. Judge Pollak did not address the RCRA claim against the state environmental agency in the published opinion, *O'Leary v. Moyer's Landfill, Inc.*, 523 F.Supp. 642 (E.D.Pa. 1981).

... shall comply with such measures as may be promulgated by the Administrator to eliminate health hazards or minimize potential health hazards." 42 U.S.C. § 6945(a).

Congress contemplated that states would carry the main burden of regulating open dumping of solid wastes. *O'Leary,* 523 F.Supp. at 649. If a state's solid waste plan meets certain specified requirements under RCRA, the Administrator is required to approve the state's application for financial assistance. 42 U.S.C. § 6947(a)–(b). However, by the same token, RCRA does not require a state to propose or adopt a solid waste management plan. *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1432 (S.D.Ohio 1984). Rather, federal funding is used as the incentive to encourage states to adopt solid waste management plans that meet the minimum requirements set by the EPA. 42 U.S.C. § 6947(b)(3); *see* H.Rep. No. 1491—Part I, 94th Cong., 2d Sess. 41, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6238, 6279.

RCRA does provide an enforcement scheme to apply to the handling and disposal of solid wastes, but this scheme does not include any remedy against the state for failure to enforce the provisions of the act other than the denial or withdrawal of approval of state solid waste plans by the Administrator of the EPA upon the Administrator's determination that a plan is not in compliance with the minimum requirements set forth in § 6943. 42 U.S.C. § 6947(a). Withdrawal of approval of a state solid waste plan means that federal financial and technical assistance will be withheld until such time as approval is reinstated. 42 U.S.C. § 6947(b)(3).

Furthermore, as in the FWPCA, there are numerous enforcement mechanisms in RCRA for relief against actual violaters of the statute and against the Administrator due to certain acts or omissions on his part, but none of these provisions contain any

mechanism for relief against a state for failure to enforce the provisions of the act. In 42 U.S.C. § 6945(a), RCRA provides that the prohibition against open dumping contained in that provision "shall be enforceable under section 6972 of this title [the citizen suit provision] *against persons engaged in the act of open dumping.*" (Emphasis added). *See also Jones v. Inmont Corp.,* 584 F.Supp. at 1432–33 (holding that § 6945 contains a substantive prohibition that can be enforced by private citizens using the citizen suit provision even in states that have not sought federal funding and have no solid waste management program in effect). Moreover, § 6945(c)(2)(A) provides that in any state that the Administrator determines has not adopted an adequate program for solid waste management facilities which may receive hazardous waste, "the Administrator *may* use the authorities under sections 6927 [hazardous waste inspection provision] and 6928 [hazardous waste enforcement provision] of this title to enforce the prohibition [against open dumping] with respect to such facilities." [11]

Neither of these provisions in § 6945 authorizes enforcement remedies against the state itself for failure to enforce the prohibition contained in § 6945(a) against those engaged in open dumping. Indeed, the legislative history behind the 1984 amendments to § 6945 and the citizen suit provision indicates that Congress intended only to authorize enforcement against parties actually engaged in open dumping practices.

Specifically, the House Report on these amendments repudiated a case where the court construed the prohibition against open dumping contained in § 6945(a) as meaning: (1) that if a state's solid waste plan has been approved by the EPA, the state has an obligation to enforce a prohibition upon all open dumping within its border, which "perhaps" may be enforced by

---

**11.** 42 U.S.C. § 6927 authorizes inspections of hazardous waste facilities by federal or state inspectors. Section 6928(a)(1) provides that the Administrator *may* issue an order assessing a civil penalty for any past or current hazardous waste violations, or *may* commence a civil ac-

tion; where the state is implementing an authorized state hazardous waste program, the Administrator must give notice to the state prior to issuing an order or commencing a civil action. 42 U.S.C. § 6928(a)(2).

"citizen suits" against the Administrator *or the officials of the relevant state agency* for failure to perform any non-discretionary duties under the Act; and (2) that there is "no independently enforceable, self-executing federal prohibition on open dumping" applicable to states that have not developed plans approved by the EPA. *See City of Gallatin v. Cherokee County,* 563 F.Supp. 940, 947–48 (E.D.Tex.1983) ("*Gallatin* "). The report stated with respect to this decision:

> This opinion misinterprets [the open dumping prohibition in § 6945(a)]. In enacting this provision, it was Congress' intent that the open dumping prohibition go into effect upon promulgation of EPA regulations ... definding (sic) open dumping, and that the prohibition be defined on the basis of those regulations. *It was also Congress' intent that persons seeking to enforce the open dumping prohibition bring suit—not against the Federal government or the state—but against persons engaged in the act of open dumping, and that Federal district courts be authorized to enjoin such persons directly.* Although the Committee believes that Congress' intent is clear on the face of the statute[, i]n light of the *City of Gallatin* decision, the Committee is amending [§ 6945(a)] (and [§ 6972(a)(1)]) to further emphasize and clarify its intent.

H.Rep. No. 198—Part I, 98th Cong., 2d Sess. 53–54, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, 5612–13 (emphasis added).

b. *Imminent and Substantial Endangerment.*

Under RCRA, there are additional mechanisms for enforcement of solid waste management guidelines where there is evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an "imminent and substantial endangerment" to health or the environment. 42 U.S.C. § 6973(a) provides that in such a situation, the Administrator *may* bring suit in the appropriate district court "against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal, to order such person to take such other action as may be necessary, or both." Unlike the enforcement provision set forth in 33 U.S.C. § 1319 of the FWPCA, § 6973(a) does not use the mandatory term "shall" to describe the Administrator's enforcement obligations.

In 1984, the RCRA citizen suit provision was amended to also authorize citizen suits in such a situation under 42 U.S.C. § 6972(a)(1)(B). The legislative history behind the 1984 enactment of this addition to the RCRA citizen suit provision states the provision "confers on citizens a *limited* right ... to sue to abate an imminent and substantial endangerment pursuant to the standards of liability under [§ 6973]," and that "this expansion of the citizens suit provision will complement, rather than conflict with, the Administrator's efforts to eliminate threats as to public health and the environment, particularly where the Government is unable to take action because of inadequate resources." H.Rep. No. 198—Part I, 98th Cong., 2d Sess. 53, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, 5612 (emphasis added).

The legislative history describes the applicable standards of liability under § 6973 as incorporating "the legal theories used for centuries to assess liability for creating a public nuisance (including intentional tort, negligency, and strict liability)." S.Rep. No. 172, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5019, 5023. The Senate Report also states that "terms and concepts, such as persons 'contributing to' disposal resulting in a substantial endangerment, are meant to be more liberal than their common law counterparts." *Id.* The report goes on to explain that "[f]or example, a company that generated hazardous waste might be someone 'contributing to' an endangerment ... even where someone else deposited the waste in an improper disposal

site (similar to strict liability under common law), where the generator had knowledge of the illicit disposal or failed to exercise due care in selecting or instructing the entity actually conducting the disposal." *Id.*

In subsequent legislative history, it was further stated:

[A]nyone who has contributed or is contributing to the creation, existence, or maintenance of an imminent and substantial endangerment is subject to the equitable authority of [§ 6973], without regard to fault or negligence. Such persons include, *but are not limited to,* past and present generators (both off-site and on-site) of hazardous wastes, past and present owners and operators o[f] waste treatment, storage or disposal facilities, and past and present transporters of solid and hazardous waste.

H.Rep. No. 198—Part I, 98th Cong., 2d Sess. 48, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, 5607 (emphasis added).

Neither the statute nor the legislative history indicate that the phrase "has contributed or ... is contributing to" contained in § 6972(a)(1)(B) or § 6973(a) was intended to extend to state regulatory agencies that have permitted ongoing violations of the prohibition against open dumping by generators, transporters, owners or operators of treatment, storage or disposal facilities. In the absence of strong indicia of contrary congressional intent, the Court is chary of reading these provisions so broadly, particularly in light of the legislative history rejecting the *Gallatin* decision and emphasizing the congressional intent that the enforcement actions should be directed at those actually involved in the dumping. Moreover, the elaborate enforcement scheme in the statute does *not* create any enforcement duties on the part of the states or permit enforcement remedies against non-complying states other than

the denial or withdrawal of approval of a state's solid waste plan. *Cf. Sea Clammers,* 453 U.S. at 14–15, 101 S.Ct. at 2623–24.

Citing *Middlesex County Board of Chosen Freeholders v. New Jersey,* 645 F.Supp. 715 (D.N.J.1986) (*"Middlesex County"*), plaintiff argues that by permitting the continued operation of the Landfill as an "open dump" in violation of 42 U.S.C. § 6945(a) over the course of a number of years, the DEQE has acted as an "operator" of the Landfill that is subject to suit under 42 U.S.C. § 6972(a). (Docket 40, pg. 7).[12] While troublesome, *Middlesex County* is distinguishable from the case at hand.

In *Middlesex County,* the court denied a motion to dismiss for failure to state a cause of action under RCRA that had been filed by defendant state department of environmental protection ("DEP") and another county defendant. In that case, plaintiff filed a citizen suit under RCRA alleging "imminent and substantial endangerment" due to conditions at a privately operated solid waste disposal facility authorized to operate by the DEP in Middlesex County. There, the DEP had issued orders redirecting the disposal of solid wastes from other counties to that particular facility. *Id.* at 717. The court broadly construed the provision contained in 42 U.S.C. § 6972(a)(1)(B) permitting citizens to sue to abate an imminent and substantial endangerment and held that "[i]f, as plaintiff contends, the dumping at Edgeboro constitutes an imminent and substantial endangerment, this court has jurisdiction." *Id.* at 721–22.

In contrast, here, plaintiff's claim against the DEQE is solely based on its allegation that the DEQE has permitted the Landfill to continue to operate in violation of RCRA without taking enforcement action against it. The proposed amended complaint contains no claim of imminent and substantial endangerment, and indeed such a claim is

12. Plaintiff also argues that the DEQE has assumed the mandatory enforcement duties of the Administrator and is subject to suit under § 6972(a)(2). But, like the FWPCA, there is no provision in RCRA permitting the delegation of the Administrator's enforcement duties to the

states. *See supra* pg. 1254. Also, a strong argument can be made that the use of the term "may" in the various enforcement provisions indicates that enforcement by the Administrator is discretionary.

unlikely as the Court has been informed that the case is close to settlement. While plaintiff perceives the state's orders to enforce the consent decree and state solid waste regulations as hollow gestures, this inaction is a far cry from actively engaging in open dumping. The proposed amended complaint, together with attachments, do not allege or contain any facts from which this Court could infer that the state was effectively the "operator" of the Landfill, or "contributed" to the dumping by specific actions.

Because this claim is legally insufficient to state a cause of action under RCRA, the Court concludes that amendment to add such a claim against the DEQE would be futile. The proper forum for the claim against the DEQE is in state court.

## CONCLUSION

The Court RECOMMENDS that the defendant DEQE's motion to dismiss be ALLOWED, and that the plaintiff's motion for leave to file an amended complaint be DENIED on the ground that amendment would be futile.[13]

---

**13.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation and must identify the portion of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).